JAMES T. JERSHIN, APPELLANT, v. ROY F. BECKER, APPELLEE.

351 N.W.2d 48

Filed June 22, 1984. No. 83-157.

James T. Gleason of Swarr, May, Smith & Andersen, for appellant.

Thomas J. Walsh of Walsh, Walentine, Miles, Fullenkamp & O'Toole, for appellee.

KRIVOSHA, C.J., WHITE, and CAPORALE, JJ., and McCOWN and BRODKEY, JJ., Retired.

BRODKEY, J., Retired.

The plaintiff, James T. Jershin, filed suit to recover damages for injuries sustained when his motorcycle collided with the automobile operated by defendant, Roy F. Becker. The jury returned a verdict in favor of the defendant, and the plaintiff has appealed.

The accident took place at approximately 4:30 p.m. on June 8, 1980, at the intersection of U.S. Highway 73-75, which runs in a north-south direction, and U.S. Highway 34, which runs in an east-west direction, in Cass County, Nebraska.

There are several traffic islands around the intersection. The island located south of the intersection on Highway 73-75, dividing the northbound and southbound lanes, is approximately 900 feet long, and is constructed in such a manner as to create a left-turn lane for traffic turning west onto Highway 34. The island north of the intersection is constructed to provide a merge lane for traffic turning northbound onto Highway 73-75 from Highway 34.

West of the intersection on Highway 34 there is a narrow island between the eastbound and westbound lanes of travel. There are also triangular-shaped islands which guide traffic either entering Highway 34 from the north or exiting Highway 34 to proceed south on Highway 73-75.

Eastbound traffic on Highway 34 is controlled by a stop sign. There are no traffic signals for the northbound and southbound traffic on Highway 73-75. It appears from the record that on the day of the accident James Jershin was operating his motorcycle traveling north on Highway 73-75, with a passenger riding on the rear of his motorcycle. He was traveling approximately 55 miles per hour and had the cruise control in operation while he was driving.

Sometime before the accident, he came upon another motorcycle traveling north, operated by Frederick E. Kerns, whose wife was a passenger on the rear of that motorcycle. The parties traveled

north, nearly side by side, with the Jershin motorcycle slightly ahead and to the right of the Kernses' motorcycle.

Jershin testified that when he was approximately at the beginning of the island located south of the intersection, he observed the defendant's car approach the stop sign on Highway 34 and that he then released the cruise control and hit his brakes slightly. He continued to observe the car while also watching the Kernses' motorcycle behind him. When Jershin was just beyond the *beginning* of the left-turn lane, he observed the defendant's car commence to "crawl" away from the stop sign into the intersection. Jershin then applied his brakes. Defendant continued east, blocking much of the northbound lane. Jershin moved his motorcycle to the left of the northbound lane, but was unable to go around the vehicle, and collided with the right rear quarter panel of the automobile. He estimated his speed at the time of the impact at 15 to 20 miles per hour.

Defendant Becker, age 84 at the time of trial, testified that he was traveling east on Highway 34 and stopped at the stop sign at the intersection of Highways 34 and 73-75. His wife was a passenger in the automobile. He testified that he looked both ways and saw no one coming, so he proceeded to cross the highway. He stated that there was nothing to obstruct the view to the south and that a person could see approximately 80 rods, or one-quarter mile, to the south. He did not see anyone until he was hit, although he again looked to the south and north while crossing. He testified that his car was completely on the gravel road east of the intersection when he was hit by plaintiff.

Both parties moved for a directed verdict at the end of the plaintiff's case, and renewed their motions at the close of the defendant's case. The court overruled the motions and submitted the case to the

jury on the issues of defendant's negligence, comparative negligence, proximate cause, and damages.

The plaintiff has argued that the trial court should have directed a verdict of liability against the defendant, or at least should have instructed the jury that the defendant was negligent as a matter of law.

The law is well established that a motorist approaching a highway protected by stop signs must stop before going upon the highway, must look to his left and to his right, and must permit a motor vehicle which is proceeding along the highway protected by stop signs to pass if it is at a distance and is traveling at a speed making it imprudent for the motorist to proceed into the intersection. *Nichols v. McArdle*, 170 Neb. 382, 102 N.W.2d 848 (1960); *Nistor v. Therkildsen*, 181 Neb. 817, 151 N.W.2d 443 (1967).

A motorist is not only obligated to look for approaching vehicles but also must see any vehicle within the radius which denotes the limit of danger. *Nichols, supra*; *Nistor, supra*. While it is true that one who fails to see an approaching vehicle that is favored over him is negligent as a matter of law, in this case whether or not the plaintiff was in a favored position is a question of fact to be determined by the trier of facts.

We have held that

"[w]hether one failed to look or looked and failed to see a vehicle when it was within the limit of danger is a question for the jury, except in those cases where the evidence is so conclusive that the approaching vehicle was within the limit of danger that reasonable minds could not differ thereon. * * * The driver of a vehicle is not required to notice every car that happens actually to be within his range of vision, but only those within the radius which denotes the limit of danger. Before a verdict can be properly directed in such a case the position of the oncoming vehicle must be definitely located in a

favored position, that is, that it was within that radius which denotes the limit of danger, otherwise the question becomes one for the jury." *Hellmeier v. Policky*, 178 Neb. 170, 172, 132 N.W.2d 760, 762-63 (1965).

The plaintiff testified that he first noticed the defendant's vehicle pull away from the stop sign when he (plaintiff) was at the point where the left-turn lane begins. The evidence indicates that when the defendant pulled out, the plaintiff was at least 300 feet away to the south. We cannot say, as a matter of law, the defendant was negligent in so doing. Whether the plaintiff was within the radius which denotes the limit of danger was the question upon which the existence of negligence on defendant's part must be determined. That question, and thus the issue of the negligence of defendant, was properly submitted to the jury. We have held that

[a] person traveling on a favored street protected by stop signs of which he has knowledge may properly assume, until he has notice to the contrary, that motorists about to enter from a nonfavored street will observe the foregoing rules. [Citations omitted.] However, the right of a motorist on a favored street to assume that a vehicle on a nonfavored street will be brought to a stop before it enters the intersection and will not proceed until the motorist has passed *neither permits the motorist on the favored street to claim the right-of-way when he is too distant from the intersection to be entitled to it nor relieves him of the duty of exercising due care to avoid an accident.* [Citation omitted.]

(Emphasis supplied.) *Hartman v. Brady*, 201 Neb. 558, 562, 270 N.W.2d 909, 912 (1978).

In his testimony the plaintiff conceded that had there been a stop sign controlling his direction of travel, he would have had sufficient room to bring his motorcycle to a stop. This is not a case where a vehicle suddenly pulled out in front of another ve-

hicle on a favored street, giving the favored vehicle no time or room to react and avoid the accident. On the contrary, the plaintiff first saw the defendant at a distance of around 900 feet, and then, when at a distance of 300 feet he saw him pull forward, he began to slow down. While plaintiff was entitled to assume that the defendant would yield the right-of-way until he had notice to the contrary, under the evidence in this case, as reflected by the record, whether he should have realized that the defendant was not going to yield the right-of-way and whether he could or should have avoided the accident were questions for determination by the jury.

> "In determining the question of whether the evidence is sufficient to submit the issues of negligence and contributory negligence to the jury, a party is entitled to have all conflicts in the evidence resolved in his favor and the benefit of every reasonable inference that may be deduced from the evidence, and if reasonable minds might draw different conclusions from a set of facts thus resolved in favor of a party, the issues of negligence and contributory negligence are for a jury."

*Moats v. Lienemann*, 188 Neb. 452, 454, 197 N.W.2d 377, 379 (1972).

The jury, after trial, decided these fact questions. The trial court properly overruled the motion for directed verdict prior to submission of the case to the jury.

The plaintiff has also argued that the jury should have been instructed on the doctrine of "last clear chance."

The doctrine of last clear chance does not apply where the negligence of the party seeking to invoke it was active and continuing as a contributing factor at the time of injury. *Maricle v. Spiegel*, 213 Neb. 223, 329 N.W.2d 80 (1983).

It is clear that if in this case the plaintiff was not negligent, the doctrine, by its definition, would have

no application. Moreover, if the actions of the plaintiff in this case did amount to negligence, it was clearly active and continuing up to the time of the collision, and therefore the doctrine would be inapplicable. We conclude that the trial court correctly refused the requested instruction.

The plaintiff's final assignment of error relates to the court's refusal to allow the driver of the second motorcycle to testify with regard to the avoidability of the accident. The first two questions asked dealt with whether the plaintiff could have safely avoided the collision, considering the position of the defendant at two different points. The third question dealt with whether the defendant could have done anything to avoid the collision.

We must first point out that the appropriate standard of review for an assignment of error directed at the exclusion of evidence is one of abuse of discretion. *Lincoln Grain v. Coopers & Lybrand*, 216 Neb. 433, 345 N.W.2d 300 (1984).

Opinion testimony by a lay witness is permitted only where it is rationally based on the perception of the witness and it is helpful to a clear understanding of his testimony or the determination of a fact in issue. Neb. Rev. Stat. § 27-701 (Reissue 1979). It is generally admissible where it is necessary and advisable as an aid to the jury, but it should be excluded whenever the point is reached at which the trier of fact is being told that which it is itself entirely equipped to determine. *Brugh v. Peterson*, 183 Neb. 190, 159 N.W.2d 321 (1968).

The questions asked of the witness sought his opinion as to each party's opportunity to avoid the accident. These were the precise issues to be determined by the jury. The testimony would merely have been the witness' conclusions, and would not be helpful to the jury in resolving the issues. There was no abuse of discretion in the exclusion of the opinions.

There being no merit to the errors assigned, we affirm the judgment of the district court.

AFFIRMED.