BERNICE M. JOHANNES, APPELLANT, V. MCNEIL REAL ESTATE
FUND VIII, LTD., A LIMITED PARTNERSHIP, DOING BUSINESS AS
TIMBER CREEK APARTMENTS, ET AL., APPELLEES.

404 N.W.2d 424

Filed April 24, 1987.   No. 85-711.

Lawrence R. Brodkey and Scott Kirshenbaum, for appellant.

J. Joseph McQuillan and Susan Andersen Anderson of Walentine, O'Toole, McQuillan & Gordon, for appellees.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

CAPORALE, J.

Plaintiff-appellant, Bernice M. Johannes, sustained injuries when she slipped and fell at a multibuilding apartment complex owned by defendant-appellee McNeil Real Estate Fund VIII, Ltd., a limited partnership, and operated by defendant-appellee Robert A. McNeil Corporation. The jury returned a verdict against her, and the trial court entered a judgment in favor of the defendants. The seven errors plaintiff assigns merge to claim that the trial court erred in (1) excluding certain evidence, (2) limiting her closing argument, (3) making a statement to the jury during the course of her closing argument, and (4) refusing to give certain requested instructions. We affirm.

Plaintiff and her husband had occupied a ground floor apartment in the complex, which is located in Omaha, for approximately 1 year prior to the occurrence in question. The building in which plaintiff's apartment is located is bordered by parking lots on its west and south sides. Plaintiff could enter or leave her apartment through a corridor which led to a doorway on the west side of the building. In addition, direct access to the apartment can be had through a patio door located on the east side of the building. There are paved sidewalks leading from the west parking lot to the west doors, but the patio door opened onto a grassy common area, or lawn. While tenants could park in any complex parking lot at which there was space, plaintiff found it closer and easier to park in the south lot and walk across the lawn to get to and from her apartment, and regularly did so.

On the morning of June 1, 1981, plaintiff left for work from the patio door and walked across the lawn. When she returned later that day, at noon, she parked her car in the south lot and started to cross the lawn to her apartment while carrying a sack of groceries and a box of laundry detergent. When she was approximately halfway between her car and her apartment, she slipped and fell. Plaintiff noticed that the area in which she fell was wetter than it had been in the morning and that she had slipped on a bare spot which was muddy and covered with weeds and grass. While there exists a dispute in the testimony, the evidence is such that the jury could find there was a

discernible pathway across the south lawn between the building containing plaintiff's apartment and the adjacent building. The evidence also establishes that refuse bins were kept in the south lot for the tenants' use.

Plaintiff established that the complex as designed contemplated a sidewalk from the south parking lot in the general vicinity of her fall. There also is evidence, however, that no ordinance of the city of Omaha required the installation of such a sidewalk and that a certificate of occupancy was issued by the city authorities for the complex as built.

Pursuant to the defendants' objections, the trial court rejected plaintiff's offer to prove that the architects preparing the original site plan anticipated the need for the unbuilt sidewalk, particularly in view of the fact that refuse bins were to be kept at the south lot. In their opinion such a sidewalk would constitute a safety measure, as sidewalks are safer to walk on than is grass.

The trial court did receive the testimony of a witness engaged in the business of managing apartments, to the effect that it was a custom and principle of the business to, upon observing such a pathway worn by tenants, fence the area, otherwise keep the tenants from walking across the area, or install a sidewalk.

The trial judge instructed the jury, in relevant part, that if defendants knew or should have known of a dangerous condition on their premises which presented an unreasonable risk of harm and had a reasonable time to correct such condition, they had a duty to use reasonable care to make the condition safe or to warn plaintiff of the condition and the risk involved. The judge defined negligence as the "doing of some act under the circumstances surrounding the accident involved which a man of ordinary prudence would not have done or the failure to do some act or to take some precaution which a man of ordinary prudence would have done or taken." Unreasonable risk of harm was defined to mean a risk that a reasonable person under all the circumstances would not allow to continue. The jury was further advised that a landlord has a duty to keep the common areas safe.

The first assignment urges that the trial court erred in excluding the proffered testimony of the architects.

The operative rule to recall is that the admission or exclusion of expert testimony is left largely to the sound discretion of the trial court, which ruling will be upheld absent an abuse of that discretion. *Aetna Cas. & Surety Co. v. Nielsen,* 222 Neb. 92, 382 N.W.2d 328 (1986); *Priest v. McConnell,* 219 Neb. 328, 363 N.W.2d 173 (1985).

Plaintiff argues that the architects' testimony concerning the anticipated need and original plan to install a sidewalk was relevant to her allegation that the defendants were negligent in not installing a sidewalk. Be that as it may, the fact that the sidewalk had been planned was a matter which had already been made known to the jury by other evidence. In addition, the architects' assessment that sidewalks are safer to walk on than grass is not the kind of determination which requires special skill, knowledge, or experience to make, as contemplated by Neb. Rev. Stat. § 27-702 (Reissue 1985). It is true that when the trial court concludes that such would assist the jury, expert testimony may be permitted even in areas where laymen have competence. *Hegarty v. Campbell Soup Co.,* 214 Neb. 716, 335 N.W.2d 758 (1983). That is not to say, however, that the exclusion of expert testimony relating to matters which are not complicated and which embrace matters of common knowledge is error. *Mathine v. Kansas-Nebraska Nat. Gas Co., Inc.,* 189 Neb. 247, 202 N.W.2d 191 (1972); *Moore v. Krejci,* 139 Neb. 562, 297 N.W. 913 (1941). Under the circumstances it cannot be said the trial court abused its discretion in excluding the architects' testimony.

The next two assignments of error, that the trial court erred in limiting plaintiff's closing argument and further erred in making a statement to the jury during the course thereof, are considered together.

For reasons the record does not reveal, the closing arguments were not reported. Plaintiff, however, attempts to raise these questions by calling our attention to certain affidavits contained in the transcript. The effort fails for a number of reasons.

Firstly, so far as the record reflects, these affidavits were not offered in evidence and, thus, are not a part of the bill of exceptions. The existence or contents of affidavits filed with the

clerk of the trial court but not preserved in the bill of exceptions cannot be known by this court. *Snyder v. Nelson*, 213 Neb. 605, 331 N.W.2d 252 (1983); *Bulger v. McCourt*, 179 Neb. 316, 138 N.W.2d 18 (1965).

Secondly, errors predicated on occurrences during the course of closing arguments cannot be shown by affidavit. In order that there may be an opportunity to make an accurate record, the proper procedure, when the full arguments are not being reported, is to call in the official reporter and make a record of what occurred part of the bill of exceptions. See *Sandomierski v. Fixemer*, 163 Neb. 716, 81 N.W.2d 142 (1957), *superseded in another respect, Kennedy v. Kennedy*, 221 Neb. 724, 380 N.W.2d 300 (1986). While it is in any event appropriate to make such a record at the close of the argument, see *Sandomierski v. Fixemer, supra*, the parties can avoid disputes about what occurred by exercising their right to have the entire arguments reported. See, Neb. Ct. R. of Official Ct. Rptrs. IV-B (rev. 1986); *Kennedy v. Kennedy, supra; Garska v. Harris*, 172 Neb. 339, 109 N.W.2d 529 (1961).

Thirdly, the record fails to show that plaintiff, prior to submission of the cause to the jury, objected to the judge's ruling and statement and moved for a mistrial on the bases thereof. These are indispensable steps which must be shown by the record, for one may not take the chance of a favorable verdict and then complain of the result. *Pitt v. Checker Cab Co.*, 217 Neb. 600, 350 N.W.2d 507 (1984).

In connection with her last assignment plaintiff claims the trial judge erred by failing to charge the jury, as she had requested, that it is not necessary to show that one who created a dangerous condition had knowledge of it, that a landlord must both give notice of and not knowingly expose tenants to "traps and hidden dangers," and that one who has superior skills, knowledge, or judgment is held to a higher standard of care than is the ordinary person.

It is true that it is not necessary to prove that an owner or operator of premises who created a hazardous condition had actual or constructive knowledge of its existence. However, such proof, as well as proof that the owner or operator of the premises had a reasonable opportunity to correct the condition,

is necessary where the hazard was created by a third person. See, *Havlicek v. Desai, ante* p. 222, 403 N.W.2d 386 (1987); *Brown v. Slack*, 159 Neb. 142, 65 N.W.2d 382 (1954). The evidence in the present case, however, is only that if the tenants had in fact worn a pathway across the lawn, a matter which is in dispute, then the custom and principle of the property management business was to either fence the area, otherwise keep tenants from walking across it, or install a sidewalk as had been planned originally. Plaintiff's position with respect to the lack of a need to establish the status of defendants' knowledge assumes that defendants created a hazardous condition by not installing a sidewalk. The evidence, however, only permits the jury to consider installation of a sidewalk as one of several means available to the defendants to keep tenants from walking across the lawn if, and only if, the jury first found that the tenants had in fact worn a pathway across the grass. Thus, the crucial condition is the existence of a worn pathway, not the lack of a sidewalk. There is no suggestion that defendants created the worn pathway; therefore, whether the pathway existed and, if so, whether defendants knew or should have known of its existence and had time to remedy the situation were questions for the jury to resolve.

The request for a trap or hidden danger instruction is equally without merit. There is no evidence that whatever conditions existed were in any way concealed or hidden and not apparent; whatever existed was there for anyone to observe. Thus, there existed no trap or hidden danger. *Gorman v. World Publishing Co.*, 178 Neb. 838, 135 N.W.2d 868 (1965).

Plaintiff next argues the jury should have been instructed that as a professional property manager, defendant Robert A. McNeil Corporation was to be held to an enhanced standard of care. The court in *LaVine v. Clear Creek Skiing Corp.*, 557 F.2d 730 (10th Cir. 1977), concluded the refusal to instruct that the defendant ski instructor's expertise was to be considered in assessing the quantum of care required did not constitute error, as there is in truth but one standard: that of reasonable prudence under the circumstances. We agree.

In the present case the jury was informed that the circumstances surrounding the accident bore on the questions

of whether negligence or an unreasonable risk of harm existed. One of those circumstances was the fact that Robert A. McNeil Corporation was a professional manager of property, a fact which was made known to the jury and presumably was argued as a significant circumstance to consider in evaluating whether the defendants had been negligent. For the foregoing reasons we must conclude that the trial court properly instructed the jury and did not commit error in rejecting plaintiff's requested instructions.

During her argument before this court, plaintiff called our attention to the fact that in *Weiss v. Autumn Hills Inv. Co.*, 223 Neb. 885, 395 N.W.2d 481 (1986), a tenant who fell while walking across a grassy common area in the dark was permitted to recover. Whatever the similarities between *Weiss* and the present case may be, there is a crucial distinction; in *Weiss* the jury resolved the factual issues in favor of the plaintiff therein and returned a verdict against the defendant therein; in the present case the jury resolved all factual issues in favor of the defendants and returned a verdict against the plaintiff. The differing results turn not on questions of law, but on questions of fact. Thus, the *Weiss* result does not control the result in this case.

The judgment of the district court is affirmed.

AFFIRMED.