STATE OF NEBRASKA, APPELLEE, V. JONATHAN WILLIAM, APPELLANT.

435 N.W.2d 174

Filed February 3, 1989.   No. 88-229.

Thomas M. Kenney, Douglas County Public Defender, and Brian S. Munnelly for appellant.

Robert M. Spire, Attorney General, and Donald E. Hyde for appellee.

Edward F. Fogarty, of Fogarty, Lund & Gross, for amici curiae Everett Lee Stewart, Sr., and Lois Stewart, special

administrators of the Estate of Pamela Jean Stewart, deceased.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

HASTINGS, C.J.

Defendant appeals from his conviction by a jury of the crime of felony motor vehicle homicide. He assigns as error the sustaining of the State's motions in limine thereby excluding testimony (1) as to police department policy as to pursuit of motor vehicles, (2) concerning the fact that the driver of the vehicle with which his vehicle collided was driving on a suspended license, and (3) of opinion by lay witnesses that the driver of the automobile with which defendant's vehicle collided could have avoided the collision. We affirm.

On the evening of August 20, 1987, Officer Brian Haskell of the Omaha Police Division was on duty. He spotted a motorcycle driven by defendant near a liquor store, which motorcycle the officer had attempted to stop 4 days earlier and which had successfully escaped.

The defendant left the parking lot and drove out into the street with his girlfriend, Pamela Stewart, riding behind him on the motorcycle. The officer followed the defendant and learned over the radio that the motorcycle was not a stolen vehicle, but that the license plate had expired. The defendant pulled into another parking lot, and the officer, thinking the defendant was going to stop, turned on his rotating red lights on the top of his cruiser. The defendant then left the parking lot and took off at a high rate of speed. The officer pursued him and activated his emergency equipment (headlights, red lights, hazard flashers, siren, etc.).

The chase continued for approximately 2 minutes through residential streets. Although the speed limit in the area was 25 m.p.h., the speeds at which the defendant and the officer were traveling exceeded the speed limit. Officer Haskell testified that the defendant was going approximately 70 m.p.h., and that he (the officer) was traveling up to 55 m.p.h. during the pursuit. The defendant ran four stop signs during the chase. The officer testified that if he had been able to stop the defendant, he would have arrested him for reckless driving.

As the defendant approached the intersection of 43d and Ohio Streets, heading west, he ran a stop sign and collided with a Corvette automobile which had entered the intersection from the north. Witnesses estimated the motorcycle's speed at the time of the collision as anywhere from 60 to 90 m.p.h. The accident reconstruction expert testified that the motorcycle was going 53 to 60 m.p.h., and the defendant testified he was going under 50 m.p.h.

Upon impact, both the defendant and Stewart were thrown from the bike. Stewart was thrown 131 feet from the point of impact and struck her head on the concrete base of a light pole. Stewart died of multiple skull fractures and brain damage. The defendant was not seriously injured.

### POLICE PROCEDURE ON PURSUIT OF VEHICLES

The evidence adduced during the offer of proof showed that the officer was aware of police procedures regarding vehicle pursuits; that he was supposed to consider road conditions, traffic, pedestrian traffic, officer safety, and safety of those not involved in the pursuit; and that he, the officer, did consider the nature of the defendant's crime, the speeds involved in the pursuit, the residential location of the pursuit, the volume of vehicle and pedestrian traffic, the time of day, the road conditions, and the weather conditions. Although defendant's counsel indicated he had obtained several policies, orders, and rulings that the police department has concerning motor vehicle pursuits, those were not made a part of the record. The evidence during the offer of proof did reveal that the officer believed several times during the pursuit that the defendant was ending the chase, that there were no children or pedestrians in the streets, that traffic was light, and that the motorcycle went substantially faster than the officer's cruiser.

Defendant argues that he should have been allowed to present evidence of the police department's policies on the pursuit of motor vehicles in order to show that Officer Haskell's conduct contributed to the victim's death. The defendant contends that the evidence was necessary as bearing on the issue of proximate cause.

Disregarding the fact that not knowing what the policies were, we are unable to determine whether they might be

relevant or not, we will discuss the general principles of proximate cause as may be applicable in this case.

Proximate cause has been defined by this court as "a moving or effective cause or fault which, in the natural and continuous sequence, unbroken by an efficient intervening cause, produces the death and without which the death would not have occurred." *State v. Sommers*, 201 Neb. 809, 811-12, 272 N.W.2d 367, 369 (1978). " 'It is the efficient cause, the one that necessarily sets in operation the factors that accomplish the death. . . .' " *State v. Lytle*, 194 Neb. 353, 358, 231 N.W.2d 681, 685 (1975); *State v. Harris*, 194 Neb. 74, 230 N.W.2d 203 (1975).

A helpful explanation was given in *State v. Dixon*, 222 Neb. 787, 796-97, 387 N.W.2d 682, 688 (1986), quoting in part from *State v. Spates*, 176 Conn. 227, 405 A.2d 656 (1978):

> Conduct is a cause of an event if the event in question would not have occurred but for that conduct; conversely, conduct is not a cause of an event if that event would have occurred without such conduct. . . .
>
> . . . .
>
> ". . . An act or omission to act is the proximate cause of death when it substantially and materially contributes, in a natural and continuous sequence, unbroken by an efficient, intervening cause, to the resulting death. It is the cause without which the death would not have occurred and the predominating cause, the substantial factor, from which death follows as a natural, direct and immediate consequence. [Citations omitted.] It is unnecessary for 'proximate cause' purposes that the particular kind of harm that results from the defendant's act be intended by him. In many situations giving rise to criminal liability, the harm that results is unintended, yet is directly or indirectly caused by an act of the defendant. In such cases, where the death or injury caused by the defendant's conduct is a foreseeable and natural result of that conduct, the law considers the chain of legal causation unbroken and holds the defendant criminally responsible."

The trial court held that the defendant's conduct was the proximate cause of the victim's death and that the officer's conduct was thus irrelevant. The defendant disagrees, claiming

that evidence of the officer's contributory negligence may be material to whether the defendant's actions were a proximate cause of death.

The case of *State v. Rotella*, 196 Neb. 741, 246 N.W.2d 74 (1976), is somewhat analogous to the present case. There, the defendant, who allegedly was driving on the wrong side of the road when he collided with the deceased's car, was convicted of motor vehicle homicide. On appeal, he complained of the trial court's refusal to allow him to present evidence that the deceased had a quantity of amphetamines in his system sufficient to impair his decisionmaking ability. The trial court determined this evidence to be irrelevant.

This court defined the issue thus: "Essentially what defendant is seeking to prove is contributory negligence on the part of the deceased. However, contributory negligence is not a defense to a charge of motor vehicle homicide. *The issue is whether defendant's violation of law was a contributing factor to the death.*" (Emphasis supplied.) *Id.* at 743, 246 N.W.2d at 76. The court then cited from other decisions holding that negligence or unlawful acts by another will not absolve the defendant.

> "When one drives a motor vehicle in violation of law pertaining to the operation of such vehicles on the public highway, and, in so doing, as a result of the violation of law, causes death to another, he is guilty of manslaughter, and neither contributory negligence of deceased nor the driver of the car in which deceased was riding when killed, can be invoked to relieve the former of criminal responsibility."

*Id.* at 744, 246 N.W.2d at 76, citing *Vaca v. State*, 150 Neb. 516, 34 N.W.2d 873 (1948).

> "In criminal cases prosecuted under the motor vehicle homicide act, the negligence or unlawful acts of another driver which proximately contributed to the death, as distinguished from an independent intervening cause thereof, [are] not a defense if the evidence is sufficient to sustain a conclusion beyond a reasonable doubt that the defendant's negligence or unlawful acts were also a proximate cause of the death of another."

*Rotella, supra* at 744, 246 N.W.2d at 76, citing *Hoffman v. State*, 162 Neb. 806, 77 N.W.2d 592 (1956).

The reasoning of the foregoing cases extends to the present circumstances. Regardless of whether the officer violated police policy or was negligent in his decision to pursue the defendant at high speeds, the defendant's actions were still a proximate cause of the death. The defendant's flight from the officer, his high rate of speed, and his failure to stop at the final stop sign all made up " 'the cause without which the death would not have occurred . . . .' " *State v. Dixon*, 222 Neb. 787, 797, 387 N.W.2d 682, 688 (1986). Under these facts, the officer's actions, even if incorrect, did not serve to negate the conclusion that it was the defendant's conduct which was " 'the efficient cause, the one that necessarily [set] in operation the factors that accomplish[ed] the death. . . .' " *State v. Lytle*, 194 Neb. 353, 358, 231 N.W.2d 681, 685 (1975). "The fact that some other agency combined with the act of the defendant to cause the death is not a defense unless the other agency is an efficient intervening cause." *State v. Meints*, 212 Neb. 410, 414, 322 N.W.2d 809, 812 (1982).

In *State v. Machmuller*, 196 Neb. 734, 246 N.W.2d 69 (1976), wherein the defendant who had threatened officers with a loaded gun taken from the officers' car argued that if the officers had followed their own procedure of locking the car door the incident would never have happened, the court stated that "[t]his effort to shift the blame for what occurred to the police officers by introducing an argument based upon proximate cause does not impress us." *Id.* at 737-38, 246 N.W.2d at 71.

There is no merit to defendant's first argument.

SUSPENDED LICENSE OF OTHER DRIVER

Subsequent to the collision, the driver of the Corvette was issued a citation for driving while his license was suspended. The defense argued that the evidence was probative of proximate cause; that is, the fact that the driver knew his license was suspended *could have* affected his driving as he heard police sirens approaching.

On appeal, the defendant's one-sentence argument on the issue is simply that the evidence was probative of the Corvette

driver's contributory negligence, which is relevant to the issue of proximate cause. Much of the prior discussion of proximate cause is applicable as well to this argument.

Moreover, the defendant has not shown how he was hurt by the exclusion of the evidence. The defense was allowed to thoroughly explore the conduct of the Corvette driver on the evening of the accident. Evidence was presented as to the Corvette's speed, the driver's visibility, and other factors bearing on the driver's role in the collision. The driver himself testified and was cross-examined. The defense was given sufficient opportunity to investigate and present evidence as to whether the Corvette driver was negligent, regardless of whether evidence was presented about the suspended license.

Finally, the dicta in *Benton v. State*, 124 Neb. 485, 247 N.W. 21 (1933), to the contrary notwithstanding, we held in *Crandall v. Ladd*, 142 Neb. 736, 744, 7 N.W.2d 642, 647 (1943), "We are not unmindful of the rule that a violation of a statute or ordinance enacted in the interest of public safety is evidence of negligence [citations omitted], but the rule cannot be made applicable unless there is some causal relation between the violation and an accident."

## OPINION EVIDENCE OF LAY WITNESS

*Jershin v. Becker*, 217 Neb. 645, 351 N.W.2d 48 (1984), although a civil case, decided nearly the same question as is presented here. In *Jershin*, the plaintiff assigned as error the court's refusal to allow an eyewitness to testify with regard to the avoidability of the accident. This court held:

> Opinion testimony by a lay witness is permitted only where it is rationally based on the perception of the witness and it is helpful to a clear understanding of his testimony or the determination of a fact in issue. Neb. Rev. Stat. § 27-701 (Reissue 1979). It is generally admissible where it is necessary and advisable as an aid to the jury, but it should be excluded whenever the point is reached at which the trier of fact is being told that which it is itself entirely equipped to determine. *Brugh v. Peterson*, 183 Neb. 190, 159 N.W.2d 321 (1968).
>
> The questions asked of the witness sought his opinion as to each party's opportunity to avoid the accident. These

were the precise issues to be determined by the jury. The testimony would merely have been the witness' conclusions, and would not be helpful to the jury in resolving the issues. There was no abuse of discretion in the exclusion of the opinions.

217 Neb. at 652, 351 N.W.2d at 53. The reasoning is equally applicable to the present case. An essential issue for the jury to decide was whether the defendant caused the collision leading to Stewart's death. The opinion evidence the defense sought to introduce was intended to have decided the issue for the jury.

In discussing the provisions of Neb. Rev. Stat. § 27-701 (Reissue 1985), this court explained, " 'It is based on the premise that the lay witness' function is to describe what he has observed and that the trier of fact will draw the conclusion from the facts observed and reproduced by the witness. . . .' " *Belitz v. Suhr*, 208 Neb. 280, 285, 303 N.W.2d 284, 288 (1981), quoting from the comment to the Proposed Nebraska Rules of Evidence, rule 701 at 107 (1973).

Finally, the full extent of the offer of proof on this issue was a statement by counsel that "I think if they can be properly qualified as far as foundation and as far as being experienced drivers and if their opinions are helpful, they should be allowed to testify as to their opinion regarding the driving of the Corvette by Rodney Jenson."

There is no merit to any of the errors assigned by the defendant, and the judgment of the district court is affirmed.

AFFIRMED.