DOYLE E. KASPER, PERSONAL REPRESENTATIVE OF THE ESTATE OF DANNY E. KASPER, DECEASED, APPELLANT, V. HOWARD E. CARLSON AND CLAUDE CAPPEL, APPELLEES.

440 N.W.2d 195

Filed May 19, 1989.    No. 87-745.

Warren C. Schrempp and Lee R. Terry, of Schrempp, Gross & Salerno, and Dennis L. Arfmann, of Winner, Nichols, Douglas, Kelly & Arfmann, for appellant.

Harold W. Kay, of Kay & Kay, for appellees.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

WHITE, J.

This is an appeal from a wrongful death action filed by Doyle E. Kasper on behalf of his son, Danny E. Kasper. This action arose from an accident which occurred on May 11, 1984, near McCook, Nebraska, between a car driven by Danny Kasper and a truck driven by Howard E. Carlson. The defendants in this action are both the driver, Carlson, and Claude Cappel, the owner of the vehicle and the employer of Carlson. At trial, the jury returned a verdict against the plaintiff, Doyle Kasper. The plaintiff appeals, assigning as errors: (1) the district court's overruling the plaintiff's motion for a directed verdict, (2) the failure of the district court to instruct the jury that the defendants were negligent as a matter of law, and (3) the admission of testimony by a "reconstruction" expert witness regarding the speed of the decedent before the accident. Because we believe that the trial court erred in not instructing the jury that the defendant Carlson was negligent as a matter of law, but find that a factual question remains regarding the contributory negligence of the decedent, we remand this cause for a new trial.

On the evening of May 11, 1984, Danny Kasper went to the home of his good friend, Jeffrey Hall, and the two of them went to "cruise" Main Street in McCook, as did most other local high school students. At approximately 10:30 p.m., Kasper and Hall proceeded south out of McCook on West River Road. River

Road is a two-lane highway that runs north-south. There are various roads intersecting the highway from the east and west. The intersections are protected by stop signs. The accident occurred at a "T" intersection, where a gravel east-west county road intersects River Road. Entry onto the paved River Road from the east-west gravel road is controlled by a stop sign located 55 feet west of River Road.

On the date of the accident, Carlson was proceeding east on the gravel county road in a truck owned by his employer, Cappel. Carlson testified that he knew a stop sign existed, and he stopped, looking both to his left (north) and right (south). At this time the decedent was driving south on River Road, approaching the intersection from the north. After stopping back at the stop sign, Carlson proceeded to the pavement of River Road. He testified that following his stop at the stop sign, 55 feet back from the intersection, he never again looked to his left, but turned to the left across the southbound lane of River Road, while looking to his right. Carlson testified that he first looked back to the left again after the front of his truck was about halfway through the intersection. The defendant testified that he never saw the headlights of the decedent's car until he looked to the left when he was already in the intersection.

Hall, the passenger in the Kasper vehicle, survived the crash. He testified at trial regarding what he could remember of the collision. Hall could not recall where he was looking at the time the Kasper vehicle neared the intersection. In fact, he did not see the pickup until seconds before the collision. He did not see Carlson enter River Road.

The force of the impact crushed the front of Kasper's Camaro, primarily on the left side. The Camaro slammed into the left side of the truck and was "submarined" under it, causing the truck to flip upside down. Kasper was killed in the accident, and both Hall and Carlson were injured.

In the appellant's first assignment of error, he contends that the district court committed error by not directing a verdict for the plaintiff. We believe this contention is in error. A trial court should direct a verdict as a matter of law only when the facts are conceded, undisputed, or such that reasonable minds can draw but one conclusion therefrom. *Sundeen v. Lehenbauer*, 229

Neb. 727, 428 N.W.2d 629 (1988). The party against whom the verdict is directed is entitled to have every controverted fact resolved in his or her favor and to have the benefit of every inference which can reasonably be drawn from the evidence. If there is any evidence which will sustain a finding for the party against whom the judgment is made, the case may not be decided as a matter of law. *Carnes v. Weesner*, 229 Neb. 641, 428 N.W.2d 493 (1988). Although we find, as discussed below, that the trial court erred in not instructing the jury that the defendant was negligent as a matter of law, there was a substantial amount of evidence regarding the speed of the Kasper vehicle at the time of the accident. Evidence that the decedent may well have exceeded the speed limit at the time of the collision constitutes an issue of fact regarding the contributory negligence of the decedent and is a proper issue for the jury. Therefore, this first assignment of error is without merit.

Regarding the appellant's second assignment of error, we agree that the trial court erred in not instructing the jury that the defendant was negligent as a matter of law. This case involves a right-of-way violation by the defendant Carlson, and there are a number of Nebraska cases applicable to this situation. It is well established in this jurisdiction that a motorist is required to yield the right-of-way to a vehicle traveling on a highway protected by stop signs if the vehicle is close enough to the intersection to pose an immediate hazard. *Chlopek v. Schmall*, 224 Neb. 78, 396 N.W.2d 103 (1986). The appellees agree with this proposition in general, but state that in this case, because the issue of the excessive speed of the decedent's vehicle was controverted, the issue of the negligence of the defendant was properly submitted to the jury and a verdict could not have been directed. We disagree.

In *Chlopek*, we also addressed the issue of the excessive speed of the plaintiff, a case involving facts very similar to the ones at issue in this case. In *Chlopek*, we stated:

> In arguing that it was excessive, the defendants would invoke the "range of vision" rule. It is a general rule that it is negligence as a matter of law for a motorist to drive a motor vehicle on a public highway, at any time, at a speed

or in such manner that it cannot be stopped or its course changed in time to avoid a collision with an object or obstruction discernible within his range of vision in the direction he was traveling. . . . " ' "The basis of the foregoing general rule is that the driver of an automobile is legally and mandatorily obligated to keep such a lookout that he can see what is plainly visible before him and to operate his automobile in such a manner that he can stop it and avoid collision with any object *in front of him*." ' " (Emphasis supplied.)

The foregoing rule is not applicable here. Plaintiffs' driver was not approaching any vehicle or object in front of him, but was approaching an intersection on the favored highway protected by stop signs, where Kelly Schmall was stopped before pulling out in front of him.

*Id*. at 83-84, 396 N.W.2d at 107. Similarly, in this case, Kasper was not approaching any vehicle in front of him but, instead, was nearing the intersection, when Carlson suddenly pulled out in front of him.

In *Chlopek*, we also reiterated the rules applicable to cases involving violation of the right-of-way of the driver on the favored highway. A driver of a motor vehicle about to enter a highway protected by stop signs is required to come to a complete stop as near the right-of-way line as possible before driving onto the highway. After stopping, the driver must yield the right-of-way to any vehicle approaching so closely on the favored highway as to constitute an immediate hazard if the driver at the stop sign moves into or across the intersection. The driver has a duty to look both to the right and to the left and to maintain a proper lookout for the safety of himself and others. A person traveling on the favored street protected by stop signs of which he has knowledge may properly assume that motorists about to enter from a nonfavored street will observe the foregoing rules. *Chlopek, supra*, citing *Hartman v. Brady*, 201 Neb. 558, 270 N.W.2d 909 (1978).

In the present case, the defendant Carlson was traveling on a gravel road that intersected with River Road into a "T" intersection. Entry onto River Road from the intersection was protected by a stop sign. In his own testimony, Carlson stated

that he stopped at the stop sign and looked both directions. At that time he was 55 feet from the pavement of River Road. After stopping at the stop sign, the defendant then drove to the pavement. Carlson stated that after starting from the stop sign 55 feet west of the favored highway, he never looked to the north (his left) again before driving onto the highway. In fact, Carlson testified that he was "about half way through the intersection" before he looked back to his left again after leaving the stop sign.

In addition, there is testimony from more than one witness that Carlson made a damaging admission following the accident. Brian Beyer happened upon the scene of the accident immediately following the impact. Beyer testified that Carlson "just kept mumbling that he couldn't stop and his foot slipped off the brake and [he] went out in the intersection." Further, Trooper Michael J. Jacoby, who arrived on the scene as the accident investigator, interviewed Carlson following the collision. At trial, Trooper Jacoby testified that when Carlson was asked if he could explain what happened at the accident, he said, "I saw the car coming. Tried to dim my lights. Slowed down. Put the brake—put the clutch and brake on. My foot slipped off the brake. I tried to put the brakes back on and my foot got stuck [and] I went through the intersection." At trial, the defendant did not dispute these admissions. Instead, when questioned by plaintiff's counsel regarding these statements, Carlson merely stated that he did not remember whether he had made them. He never contended that he did not make the statements.

Because the evidence as discussed above was established at trial, the plaintiff is entitled to an instruction that the defendant Carlson was negligent as a matter of law. The contributory negligence of the decedent is another matter.

Because of the considerable evidence regarding the speed of the Kasper vehicle at the time of the accident, an issue of fact remains regarding the contributory negligence of the decedent. Therefore, this cause must be remanded for a new trial.

In his final assignment of error, the appellant contends the district court erred in admitting the testimony of the appellees' reconstruction experts, as there was no adequate factual basis

for admission of testimony by those experts. The admission of evidence from expert witnesses is a matter left to the discretion of the trial court, and its ruling will be upheld absent an abuse of that discretion. *Johannes v. McNeil Real Estate Fund VIII*, 225 Neb. 283, 404 N.W.2d 424 (1987); *Herman v. Lee*, 210 Neb. 563, 316 N.W.2d 56 (1982). As the evidence on retrial may well be different from that presented at the first trial, no benefit would result from consideration of this alleged error.

Accordingly, the judgment is reversed and the cause remanded to the district court for a new trial in accordance with the foregoing opinion.

REVERSED AND REMANDED FOR A NEW TRIAL.

BOSLAUGH, J., dissenting.

The majority opinion determines that the judgment should be reversed because the trial court failed to give a requested instruction that the defendant Carlson was negligent as a matter of law. That finding appears to be based upon the defendant's failure to see the Kasper automobile approaching from the north and the statement that the patrolman and Beyer testified the defendant made following the accident.

As we stated today in *Jones v. Goeden, post* p. 177, 180, 440 N.W.2d 199, 202 (1989), "Generally, the failure to see an approaching vehicle is not negligence as a matter of law unless the vehicle is undisputably located in a favored position. *Getzschman v. Yard Co.*, 229 Neb. 231, 426 N.W.2d 499 (1988)." As I understand the record in this case, there is no evidence which undisputably locates the Kasper vehicle in a favored position.

The failure of a motorist to maintain a continuous lookout is not such evidence of negligence as would bar a recovery unless it be conclusively shown that the other vehicle was in the area of danger. *Pupkes v. Wilson*, 172 Neb. 15, 108 N.W.2d 220 (1961). The driver of a vehicle is not required to notice every car that happens actually to be within his range of vision, but only those within that radius which denotes the limit of danger. Before a verdict can be properly directed in such a case, the oncoming vehicle must be definitely located in a favored position, that is, that it was within that radius which denotes the limit of danger; otherwise, the question becomes one for the jury. *Pupkes v.*

*Wilson, supra.* See, *Hellmeier v. Policky,* 178 Neb. 170, 132 N.W.2d 760 (1965); *Jershin v. Becker,* 217 Neb. 645, 351 N.W.2d 48 (1984); *Treffer v. Seevers,* 195 Neb. 114, 237 N.W.2d 114 (1975).

The case is further complicated by the fact that although the appellant has assigned as error the failure to give the requested instruction, the transcript does not contain the instructions of the court on which the case was submitted to the jury. See *Malcom v. Hansen,* 32 Neb. 50, 48 N.W. 883 (1891).

So far as the defendant's statement to the patrolman and Beyer is concerned, the defendant's testimony as to how the accident happened, together with his deposition statement, offered by the appellant, that defendant's foot did not "get stuck between the clutch and brake," was a sufficient denial to make it a question for the jury as to how the accident happened.

CAPORALE, J., joins in this dissent.