STATE OF NEBRASKA, APPELLEE, v. GERALD DEAN RING, APPELLANT.
447 N.W.2d 908

Filed November 9, 1989.    No. 88-880.

Timothy W. Shuminsky, of Shuminsky, Shuminsky & Molstad, for appellant.

Robert M. Spire, Attorney General, and Susan M. Ugai for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

PER CURIAM.

Defendant, Gerald Dean Ring, appeals convictions entered pursuant to verdicts of felony motor vehicle homicide, in violation of Neb. Rev. Stat. § 28-306 (Reissue 1985), and of using a motor vehicle as a deadly weapon in the commission of the homicide, in violation of Neb. Rev. Stat. § 28-1205 (Reissue 1985). His five assignments of error may be summarized as challenging (1) the district court's failure to dismiss the use of a deadly weapon complaint and (2) the district court's charge to the jury. We affirm the motor vehicle homicide conviction, but reverse and vacate the use of a deadly weapon conviction.

The facts of the case are uncontroverted. Ring stipulated that the subject accident occurred, that he was driving the vehicle which collided with the automobile driven by Darlene Sergott, that Sergott died as a result of the accident, and that he pled guilty to a charge of driving while under the influence of alcoholic beverages at the time of the accident. (No issue being raised as to the effect, if any, of that plea on the prosecution of either of the crimes charged in this case, we do not concern ourselves with that matter.)

Although it was very cold on the day of the accident, the road surface was dry, visibility was unrestricted, and driving conditions were generally good. Possibly because of merging traffic, the Sergott automobile was either stopped or moving at

a very low rate of speed when the Ring vehicle, which was moving at a much higher rate of speed, collided with the rear of the Sergott automobile. Ring applied the brakes on his vehicle in an unsuccessful effort to stop before the collision.

The State presented evidence that Ring was intoxicated at the time of the accident and that the consumption of alcohol impairs one's coordination, reaction time, and ability to operate a motor vehicle.

In connection with the first summarized challenge to his convictions, Ring argues that it was not the intent of the Legislature to provide cumulative punishment under § 28-1205 for violations of § 28-306.

Section 28-306 states:

(1) A person who causes the death of another unintentionally while engaged in the operation of a motor vehicle in violation of the law of the State of Nebraska or in violation of any city or village ordinance commits motor vehicle homicide.

(2) Except as provided in subsection (3) of this section, motor vehicle homicide is a Class I misdemeanor.

(3) If the proximate cause of the death of another is the operation of a motor vehicle in violation of section 39-669.01, 39-669.03, or 39-669.07, motor vehicle homicide is a Class IV felony.

With respect to the sections referenced by § 28-306(3), Neb. Rev. Stat. § 39-669.01 (Reissue 1988) deals with reckless driving, Neb. Rev. Stat. § 39-669.03 (Reissue 1988) deals with willful reckless driving, and Neb. Rev. Stat. § 39-669.07 (Reissue 1988) deals with driving while under the influence of alcohol.

In addition, § 28-1205 states:

(1) Any person who uses a firearm, knife, brass or iron knuckles, or any other deadly weapon to commit any felony which may be prosecuted in a court of this state, or any person who unlawfully possesses a firearm, knife, brass or iron knuckles, or any other deadly weapon during the commission of any felony which may be prosecuted in a court of this state commits the offense of using firearms to commit a felony.

(2) Use of firearms to commit a felony is a Class III felony.

(3) The crime defined in this section shall be treated as a separate and distinct offense from the felony being committed, and sentences imposed under the provisions of this section shall be consecutive to any other sentence imposed.

Neb. Rev. Stat. § 28-109(7) (Reissue 1985) defines deadly weapon as "any firearm, knife, bludgeon, or other device, instrument, material, or substance, whether animate or inanimate, which in the manner it is used or intended to be used is capable of producing death or serious bodily injury." It is therefore apparent that a vehicle can, under appropriate circumstances, be deemed to be a deadly weapon. See, *State v. Sianouthai*, 225 Neb. 62, 402 N.W.2d 316 (1987); *State v. Hatwan*, 208 Neb. 450, 303 N.W.2d 779 (1981). See, also, *State v. Williams*, 218 Neb. 57, 352 N.W.2d 576 (1984).

In determining what conduct is proscribed by § 28-1205, we must closely examine the statutory language which reads that "[a]ny person who uses a . . . deadly weapon to commit any felony . . . commits the offense . . . ." Assuming that Ring's vehicle did constitute a deadly weapon in this case, there can be no question that Ring was using his vehicle when he collided with the Sergott automobile. But was he using the vehicle "to commit a felony"? The answer to this critical question depends upon the definition of the word "to" as it is used in the statute. Within the context of § 28-1205, "to" could be interpreted to mean "for the purpose of" or "with the result of." See, Webster's Third New International Dictionary, Unabridged 2401 (1981); 18 The Oxford English Dictionary 163-64 (2d ed. 1989).

The question, then, is whether Ring can be convicted of the deadly weapon charge if he merely used his vehicle *with the result of* committing motor vehicle homicide, or must he have instead used his vehicle *for the purpose of* committing felony motor vehicle homicide. The question is obviously one of statutory interpretation.

In the absence of anything indicating to the contrary, statutory language is to be given its plain and ordinary

meaning. *In re Interest of Richter*, 226 Neb. 874, 415 N.W.2d 476 (1987). Although a penal statute must be strictly construed, such statute should be given a sensible construction with its general terms limited in construction and application to prevent injustice, oppression, or an absurd consequence. *Wounded Shield v. Gunter*, 225 Neb. 327, 405 N.W.2d 9 (1987); *State v. Valencia*, 205 Neb. 719, 290 N.W.2d 181 (1980). Furthermore, while a penal statute is to be construed strictly, it is to be given a sensible construction in the context of the object sought to be accomplished, the evils and mischiefs sought to be remedied, and the purpose sought to be served. *In re Interest of Richter, supra*; *State v. Burke*, 225 Neb. 625, 408 N.W.2d 239 (1987).

The apparent purposes behind § 28-1205 are to discourage individuals from employing deadly weapons in order to facilitate or effectuate the commission of felonies and to discourage persons from carrying deadly weapons while they commit felonies. The statute is designed to regulate the manner in which felonies are committed, i.e., with the use or possession of deadly weapons. See Floor Debate, L.B. 38, Judiciary Committee, 85th Leg., 1st Sess. 2679-80, 2682 (Apr. 13, 1977). It cannot reasonably be said that § 28-1205 will dissuade a person from using a deadly weapon to commit an unintentional felony; the two concepts are logically inconsistent. Thus, in order to interpret § 28-1205 in a manner which is consistent with its objective, we hold that the language "to commit any felony," as it is used in that section, is synonymous with "for the purpose of committing any felony."

Our requirement that a conviction under § 28-1205 requires proof that the defendant used a deadly weapon for the purpose of committing a felony comports with our recent analysis in *State v. Pettit, ante* p. 436, 447, 445 N.W.2d 890, 897 (1989), wherein we stated: " 'Strict liability offenses are the exception rather than the rule and will only be found where there is a clear legislative intent not to require any degree of mens rea . . . .' "

> In determining whether criminal intent is an element of manslaughter "upon a sudden quarrel," we bear in mind the general rule that "criminal statutes are interpreted as requiring criminal intent, and this is particularly true in situations in which the offense involved is a felony."

*United States v. O'Brien*, 686 F.2d 850, 853 (10th Cir. 1982). As the U.S. Supreme Court has observed:

"The contention that an injury can amount to a crime only when inflicted by intention is no provincial or transient notion. It is as universal and persistent in mature systems of law as belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil. A relation between some mental element and punishment for a harmful act is almost as instinctive as the child's familiar exculpatory 'But I didn't mean to,' and has afforded the rational basis for a tardy and unfinished substitution of deterrence and reformation in place of retaliation and vengeance as the motivation for public prosecution."

*Id.* at 445-46, 445 N.W.2d at 897.

Thus, in order to convict Ring of the deadly weapon charge in this case, the State was required to prove beyond a reasonable doubt that Ring used his vehicle *for the purpose of* committing a felony. Clearly, the State did not meet this burden of proof. The felony which served as the basis of the deadly weapon charge, felony motor vehicle homicide, is, by definition, a felony which is committed unintentionally. In addition, while Ring may have negligently collided with the Sergott vehicle, nothing in the record indicates that Ring sought or intended to commit the felony motor vehicle homicide. In fact, it is apparent that Ring attempted to avoid the accident which precipitated his felony motor vehicle homicide conviction by applying the brakes of his vehicle. Because Ring did not use his vehicle for the purpose of committing felony motor vehicle homicide, the court erred in failing to dismiss the deadly weapon charge. Consequently, the district court's judgment in that regard must be reversed, and Ring's conviction on that charge must be vacated.

Ring next argues that the district court erred by refusing to instruct the jury that in order to find an accused committed felony motor vehicle homicide in violation of § 28-306 by driving while intoxicated, the State must prove that the accused's intoxication was the proximate cause of the accident and resulting death.

Although Ring's statement of the law is correct, it is difficult to understand the basis for his claim of error. The district court's charge included the very instructions which Ring alleges to have been refused. The charge to the jury included an instruction on the elements of the crime of motor vehicle homicide as follows:

> The material elements which the State must prove by evidence beyond a reasonable doubt in order to convict [Ring] of the crime of motor vehicle homicide are:
>
> 1. That [Ring] caused the death of Darlene P. Sergott.
>
> 2. That [Ring] did so unintentionally while engaged in the unlawful operation of a motor vehicle.
>
> 3. That [Ring's] unlawful operation of a motor vehicle consisted of:
>
> a. Driving his motor vehicle while under the influence of alcoholic liquor, or
>
> b. Reckless driving.
>
> 4. That [Ring's] unlawful operation of a motor vehicle was the proximate cause of the death of Darlene P. Sergott.

Another instruction clearly defined the meaning of proximate cause.

As this court has stated, a trial court retains discretion in the wording of jury instructions. All the instructions must be read together, and if the instructions taken as a whole correctly state the law, there is no prejudicial error. *State v. Donhauser*, 231 Neb. 114, 435 N.W.2d 186 (1989); *State v. Hankins*, 232 Neb. 608, 441 N.W.2d 854 (1989).

Finally, Ring claims the district court erred in its charge to the jury by refusing to instruct that "no person shall operate a motor vehicle at such a slow rate of speed as to impede the normal and reasonable flow of traffic." Ring argues that the failure to give this instruction prevented him from arguing that the victim's own conduct, rather than his intoxication or reckless driving, proximately caused the victim's death. The fact is, however, that the instructions given permitted Ring to argue to the jury that his conduct was not the proximate cause of Sergott's death.

What Ring in effect urges here is that his conduct was

excused by Sergott's own contributory negligence. However, this court has consistently held that contributory negligence is not a defense to the charge of motor vehicle homicide. *State v. William*, 231 Neb. 84, 435 N.W.2d 174 (1989). In *William*, the defendant was charged with felony motor vehicle homicide after a collision occurred while he was attempting to elude a pursuing police officer. At trial, William sought to introduce evidence relating to the possible contributory negligence of both the police officer and the driver of another vehicle which was involved in the accident. A portion of the evidence which William sought to introduce related to police procedures regarding vehicle pursuits. In upholding the trial court's exclusion of the evidence, this court stated:

> " 'In criminal cases prosecuted under the motor vehicle homicide act, the negligence or unlawful acts of another driver which proximately contributed to the death, as distinguished from an independent intervening cause thereof, [are] not a defense if the evidence is sufficient to sustain a conclusion beyond a reasonable doubt that the defendant's negligence or unlawful acts were also a proximate cause of the death of another.' "

*Id.* at 89, 435 N.W.2d at 178, quoting *State v. Rotella*, 196 Neb. 741, 246 N.W.2d 74 (1976). The court continued by more specifically addressing the trial court's exclusion of evidence relating to police procedures for vehicle pursuits:

> Regardless of whether the officer violated police policy or was negligent in his decision to pursue the defendant at high speeds, the defendant's actions were still a proximate cause of the death. The defendant's flight from the officer, his high rate of speed, and his failure to stop at the final stop sign all made up " 'the cause without which the death would not have occurred . . . .' " *State v. Dixon*, 222 Neb. 787, 797, 387 N.W.2d 682, 688 (1986). Under these facts, the officer's actions, even if incorrect, did not serve to negate the conclusion that it was the defendant's conduct which was " 'the efficient cause, the one that necessarily [set] in operation the factors that accomplish[ed] the death. . . .' " *State v. Lytle*, 194 Neb. 353, 358, 231 N.W.2d 681, 685 (1975). "The fact that some other agency

combined with the act of the defendant to cause the death is not a defense unless the other agency is an efficient intervening cause." *State v. Meints*, 212 Neb. 410, 414, 322 N.W.2d 809, 812 (1982).

231 Neb. at 90, 435 N.W.2d at 178.

Thus, we reverse the district court's judgment with respect to the use of a deadly weapon charge and vacate that conviction, but affirm the judgment of the district court with respect to the felony motor vehicle homicide conviction.

AFFIRMED IN PART, AND IN PART
REVERSED AND VACATED.

WHITE, J., dissenting in part.

I agree that the motor vehicle homicide conviction and sentence should be affirmed.

The majority agrees that a motor vehicle can be a deadly weapon, citing *State v. Sianouthai*, 225 Neb. 62, 402 N.W.2d 316 (1987). A deadly weapon is an instrument or device "which in the manner *it is used* or intended to be used is capable of producing death or serious bodily injury." (Emphasis supplied.) Neb. Rev. Stat. § 28-109(7) (Reissue 1985).

That the jury believed the appellant used a motor vehicle in the commission of felony motor vehicle homicide is obvious. The simple conclusion would be, then, that a deadly weapon (the vehicle) was the device *used* that resulted in the death of another and that unless otherwise prohibited, the appellant could be charged with, convicted of, and punished for use of a weapon to commit a felony.

The majority determines otherwise by concluding that the modest word "to" requires that the actor intend to use the weapon to accomplish the commission of the felony. I submit that the word "to," in the context of § 28-109, more appropriately means the method or instrument by which the thing prohibited is done, and nothing more. I can read no requirement of a subjective intent in either § 28-109 or Neb. Rev. Stat. § 28-1205 (Reissue 1985), save and except as the underlying felony in a § 28-1205 prosecution may require a specific intent.

As the offenses of felony motor vehicle homicide and the use of a weapon to commit a felony are not lesser-included offenses

of one another, and as the Legislature has provided an enhanced penalty, I would affirm both convictions.

FAHRNBRUCH, J., joins in this dissent.