Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
07/09/2021 08:11 AM CDT

State of Nebraska, appellee, v.
Kevin W. Malone, appellant.

___ N.W.2d ___

Filed April 16, 2021.    Nos. S-20-118, S-20-460.

1. **Rules of the Supreme Court: Appeal and Error.** Whether a party has complied with the requirements under the Nebraska Supreme Court rules of appellate procedure is determined de novo upon a review of the record.
2. **Postconviction: Constitutional Law: Appeal and Error.** In appeals from postconviction proceedings, an appellate court reviews de novo a determination that the defendant failed to allege sufficient facts to demonstrate a violation of his or her constitutional rights or that the record and files affirmatively show that the defendant is entitled to no relief.
3. **Effectiveness of Counsel: Appeal and Error.** Claims of ineffective assistance of counsel involve mixed questions of law and fact.
4. ____: ____. When reviewing claims of ineffective assistance of counsel, an appellate court reviews the factual findings of the lower court for clear error and the legal determinations de novo.
5. **Records: Appeal and Error.** An accurate bill of exceptions is essential to providing meaningful appellate review.
6. **Evidence: Records: Appeal and Error.** As the only proper vehicle for bringing evidence before an appellate court, a bill of exceptions imports absolute verity once it has been submitted on appeal.
7. **Appeal and Error.** A remand order generally terminates the present appeal's pendency.
8. **Rules of the Supreme Court: Records: Appeal and Error.** There is only one proper procedure for amending a bill of exceptions, and it is set out in Neb. Ct. R. App. P. § 2-105(B)(5) (rev. 2018).
9. **Rules of the Supreme Court: Appeal and Error.** Parties must strictly comply with the Nebraska Supreme Court rules of appellate procedure.
10. ____: ____. A case is eligible for submission at any time after the appellee's brief has been filed.

11. **Rules of the Supreme Court: Records: Appeal and Error.** The terms of Neb. Ct. R. App. P. § 2-105(B)(5) (rev. 2018) require that a motion to amend the bill of exceptions be filed in the district court and not in an appellate court.

12. **Postconviction: Constitutional Law.** Under the Nebraska Postconviction Act, a prisoner in custody may move to be released on the ground that there was such a denial or infringement of his or her constitutional rights as to render the judgment void or voidable.

13. **Postconviction: Appeal and Error.** Postconviction relief is a very narrow category of relief and is not intended to secure a routine review for any defendant dissatisfied with his or her sentence.

14. ____: ____. A motion for postconviction relief cannot be used to secure review of issues that were known to the defendant and which were or could have been litigated on direct appeal.

15. **Postconviction: Proof.** An evidentiary hearing on a motion for postconviction relief is not required if (1) the motion does not contain factual allegations of a violation or infringement of the prisoner's constitutional rights, (2) the motion alleges only conclusions of fact or law, or (3) the record affirmatively shows that the prisoner is entitled to no relief.

16. **Postconviction.** In the absence of allegations that would render the judgment void or voidable, the proper course is to overrule a motion for postconviction relief without an evidentiary hearing for failure to state a claim.

17. **Appeal and Error.** An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court.

18. **Effectiveness of Counsel: Constitutional Law.** Under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), a criminal defendant's rights under U.S. Const. amend. VI may be violated if he or she is afforded inadequate representation by his or her attorney.

19. **Postconviction: Effectiveness of Counsel.** Under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), two steps of analysis are required to determine whether a defendant is entitled to postconviction relief based on a claim of ineffective assistance of counsel.

20. **Effectiveness of Counsel: Proof: Appeal and Error.** Although both elements under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), must be met for a meritorious claim of ineffective assistance of counsel, an appellate court may address them in either order.

21. **Effectiveness of Counsel: Proof.** To prevail on a claim of ineffective assistance of counsel, a defendant must first show that his or her

attorney's performance was deficient, meaning it objectively did not equal that of a lawyer with ordinary training and skill in criminal law.

22. ____: ____. To prevail on a claim of ineffective assistance of counsel, the defendant must show that he or she suffered prejudice as a result of the attorney's deficient performance.

23. **Effectiveness of Counsel: Words and Phrases.** Prejudice means a reasonable probability that but for the attorney's deficient performance, the result of the proceeding would have been different.

24. **Words and Phrases.** A reasonable probability is a substantial probability sufficient to undermine confidence in the outcome.

25. **Effectiveness of Counsel: Presumptions: Appeal and Error.** An appellate court reviews claims of ineffective assistance of counsel with a strong presumption that counsel's actions were reasonable.

26. **Postconviction: Effectiveness of Counsel: Appeal and Error.** Where a defendant was represented by the same attorney at trial and on direct appeal, the defendant is not procedurally barred from raising trial counsel's ineffectiveness in a motion for postconviction relief.

27. **Attorney and Client: Conflict of Interest: Words and Phrases.** The phrase "conflict of interest" denotes a situation in which regard for one duty tends to lead to disregard of another or where a lawyer's representation of one client is rendered less effective by reason of his or her representation of another client.

28. **Effectiveness of Counsel: Conflict of Interest: Presumptions: Appeal and Error.** When a defendant shows that an actual conflict of interest burdened his or her attorney's representation and affected the lawyer's performance, an appellate court applies a presumption of prejudice, because it is difficult to measure the precise effect on the defense of representation corrupted by conflicting interests.

29. **Effectiveness of Counsel: Conflict of Interest: Words and Phrases.** The phrase "actual conflict of interest" encompasses any situation in which a defense counsel faces divided loyalties such that regard for one duty tends to lead to disregard of another.

30. **Effectiveness of Counsel: Conflict of Interest.** An actual conflict of interest is one that adversely affects counsel's performance.

31. **Effectiveness of Counsel: Conflict of Interest: Appeal and Error.** While there are several types of conflicts of interest that could arise, where the issue is that the client's interests could conflict with the attorney's personal interests, an appellate court deems it a personal interest conflict.

32. ____: ____: ____. A personal interest conflict is arguably the least consequential type of conflict that an appellate court recognizes, because when the attorney has a personal conflict, the attorney can still fulfill

his or her duty of loyalty to a client, although doing so may be to the detriment of the attorney's personal interest.

33. **Effectiveness of Counsel: Conflict of Interest: Presumptions: Appeal and Error.** An appellate court generally does not apply a presumption of prejudice to personal interest conflicts unless the defendant shows that his or her defense counsel faced a situation in which conflicting loyalties pointed in opposite directions and that his or her counsel acted for the other client's interests or the counsel's own personal interests and against the defendant's interests.

34. **Right to Counsel: Conflict of Interest: Waiver.** A defendant can waive his or her right to assistance of counsel unhindered by a conflict of interest, provided that the waiver is knowing and intelligent.

35. **Right to Counsel: Waiver: Appeal and Error.** There is no formalistic litany required to establish that a waiver was knowingly and intelligently made; instead, when considering whether a defendant voluntarily, knowingly, and intelligently waived his or her right to counsel, an appellate court reviews the totality of the circumstances appearing in the record.

36. **Constitutional Law: Waiver: Records.** A voluntary waiver, knowingly and intelligently made, must affirmatively appear from the record, before a court may conclude that a defendant has waived a right constitutionally guaranteed or granted by statute.

37. **Constitutional Law: Waiver: Appeal and Error.** In determining whether a defendant's waiver of a statutory or constitutional right was voluntary, knowing, and intelligent, an appellate court applies a clearly erroneous standard of review.

38. **Judgments: Appeal and Error.** Under a clearly erroneous standard of review, an appellate court does not reweigh the evidence, but the appellate court decides the ultimate question independent of the trial court's ruling.

39. **Homicide: Motor Vehicles: Negligence.** Contributory negligence is not a defense to the charge of motor vehicle homicide; rather, for purposes of a defendant's liability, the issue is whether a defendant's violation of the law was a contributing factor to the death.

40. **Negligence: Proximate Cause.** If a decedent's negligence is the sole proximate cause of his death, then the decedent's negligence is a defense.

41. ____: ____. Proximate causation refers to the basic requirement that there must be some direct relation between the injury asserted and the injurious conduct alleged.

42. **Negligence: Proximate Cause: Words and Phrases.** A "proximate cause" is a moving or effective cause or fault which, in the natural and continuous sequence, unbroken by an efficient intervening cause,

produces a death or injury and without which the death or injury would not have occurred.

43. **Criminal Law: Negligence: Proximate Cause: Words and Phrases.** Criminal conduct is a proximate cause of the event in question if the event would not have occurred but for that conduct.

44. **Negligence: Proximate Cause: Words and Phrases.** Conduct is not a proximate cause of an event if that event would have occurred without such conduct.

45. **Trial: Photographs.** Because gruesome crimes produce gruesome photographs, the simple fact that a photograph is gruesome does not make the photograph inadmissible as unduly prejudicial.

46. **Trial: Homicide: Photographs.** If the State lays proper foundation, photographs that illustrate or make clear a controverted issue in a homicide case are admissible, even if gruesome.

47. **Constitutional Law: Miranda Rights: Self-Incrimination.** *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), prohibits the use of statements derived during custodial interrogation unless the prosecution demonstrates the use of procedural safeguards that are effective to secure the privilege against self-incrimination.

48. ____: ____: ____. The safeguards provided by *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), come into play whenever a person in custody is subjected to either express questioning or its functional equivalent.

49. ____: ____: ____. Under *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), only that testimony obtained unlawfully during custodial interrogation is subject to suppression.

50. **Trial: Parties.** Bifurcation of a trial is generally only appropriate where separate proceedings will do justice, avoid prejudice, and further the convenience of the parties and the court.

51. **Trial.** Whether claims should be bifurcated is generally within the discretion of the trial court.

52. **Trial: Prosecuting Attorneys: Juries.** Prosecutors are charged with the duty to conduct criminal trials in such a manner that the accused may have a fair and impartial trial, and prosecutors are not to inflame the prejudices or excite the passions of the jury against the accused.

53. **Trial: Prosecuting Attorneys: Appeal and Error.** When considering a claim of prosecutorial misconduct, an appellate court first considers whether the prosecutor's acts constitute misconduct.

54. **Trial: Prosecuting Attorneys: Words and Phrases.** Prosecutorial misconduct encompasses conduct that violates legal or ethical standards for various contexts because the conduct will or may undermine a defendant's right to a fair trial.

55. **Trial: Prosecuting Attorneys.** While a prosecutor should prosecute with earnestness and vigor and may strike hard blows, he or she is not at liberty to strike foul ones.

56. **Trial: Prosecuting Attorneys: Juries.** A prosecutor's conduct that does not mislead and unduly influence the jury is not misconduct.

57. **Trial: Prosecuting Attorneys: Due Process.** A prosecutor's misconduct that prejudices a defendant's right to a fair trial violates due process.

58. **Pretrial Procedure: Prosecuting Attorneys: Evidence.** Under *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), prosecutors owe a duty to disclose favorable evidence to criminal defendants prior to trial.

59. **Evidence: Impeachment: Words and Phrases.** Favorable evidence includes both exculpatory and impeachment evidence.

60. **Prosecuting Attorneys: Evidence: Due Process.** Suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.

61. **Trial: Prosecuting Attorneys: Evidence.** A prosecutor should not express his or her personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant.

62. **Trial: Prosecuting Attorneys.** A prosecutor is entitled to draw inferences from the evidence in presenting his or her case, and such inferences generally do not amount to prosecutorial misconduct.

63. ____: ____. When a prosecutor's comments rest on reasonably drawn inferences from the evidence, the prosecutor is permitted to present a spirited summation that a defense theory is illogical or unsupported by the evidence and to highlight the relative believability of witnesses for the State and the defense.

64. ____: ____. In cases where the prosecutor comments on the theory of defense, the defendant's veracity, or the defendant's guilt, the prosecutor crosses the line into misconduct only if the prosecutor's comments are expressions of the prosecutor's personal beliefs rather than a summation of the evidence.

65. **Trial: Prosecuting Attorneys: Juries.** The danger of a prosecutor expressing a personal opinion is that the jurors may infer the prosecutor has access to information not in evidence and that with that inference and the imprimatur of the government, the jury might rest a decision on the government's opinion rather than on its own view of the evidence.

Appeals from the District Court for Douglas County: SHELLY R. STRATMAN, Judge. Affirmed.

Richard L. Boucher and Bradley H. Supernaw, of Boucher Law Firm, for appellant.

Douglas J. Peterson, Attorney General, and Melissa R. Vincent for appellee.

HEAVICAN, C.J., MILLER-LERMAN, CASSEL, STACY, FUNKE, PAPIK, and FREUDENBERG, JJ.

HEAVICAN, C.J.

## I. INTRODUCTION

Kevin W. Malone challenges his convictions and sentences, alleging that at trial and on direct appeal he was provided ineffective assistance of counsel and subjected to prosecutorial misconduct. His motion seeking postconviction relief was denied without an evidentiary hearing. Malone appealed.

With that appeal pending, Malone found what he thought were three misstatements in the bill of exceptions. He filed an application before the Nebraska Court of Appeals to remand the cause for a hearing to determine whether to amend the bill of exceptions. After a hearing, the district court denied relief. Malone again appealed.

For the reasons stated herein, we find that the arguments contained in Malone's appeals are without merit. We affirm.

## II. BACKGROUND

### 1. CONVICTIONS

In May 2017, Malone was tried by a jury on counts of motor vehicle homicide, manslaughter, leaving the scene of a personal injury accident resulting in serious bodily injury or death, and driving without an ignition interlock device. The charges stemmed from a 2016 car-motorcycle collision in Omaha, Nebraska. After Malone had run a red light, his car and Justin Hart's motorcycle collided, resulting in Hart's death.

The jury found Malone guilty on all four counts. After accepting the jury's verdict, the district court sentenced Malone

to a total of 40 to 50 years' imprisonment and revoked his driver's license for 15 years. The Court of Appeals affirmed, rejecting Malone's claims of insufficient evidence and excessive sentences.[1]

## 2. Request for Writ of Mandamus

During his direct appeal, Malone found what he believed were misstatements in the bill of exceptions. The court reporter at Malone's trial had certified that the bill of exceptions was "correct and complete." But, disputing this, Malone sent a letter to the court reporter in April 2018, alleging that three exchanges at trial between the prosecutor and him had been omitted from the bill of exceptions. Malone requested that the court reporter review the audio recording from trial to verify whether these exchanges had indeed occurred. He also requested access to the audio recording.

The court reporter responded with a letter, stating, "I have listened to the entire cross-examination [at issue,] and the [b]ill of [e]xceptions that you have is an accurate transcription of what was said in court on that day."

Malone next wrote to the district court judge who had presided over his trial. In June 2018, that judge replied to Malone's letter by noting that she had "reviewed the record" and determined Malone's "claim that there is testimony missing . . . is unfounded." The judge accordingly denied Malone's request to access the audio recording from trial because Malone had already been "provided with the bill of exceptions as requested."

In January 2019, Malone filed a pro se "Complaint for Writ of Mandamus" in the district court for Douglas County, seeking to compel production of the audio recording from his trial. That complaint was followed by pro se motions for a "Change of Judge," for "Audio Record per Public Records Law," and for "Discovery Evidence: Sound [R]ecordings." Malone's

---

[1] See *State v. Malone*, 26 Neb. App. 121, 917 N.W.2d 164 (2018).

complaint and motions were denied, and in October 2020, we dismissed his appeal on jurisdictional grounds.[2]

### 3. Motion for Postconviction Relief

In June 2019, with his mandamus action still pending, Malone filed a verified motion for postconviction relief. After having been represented by the same attorney at trial and on direct appeal, Malone was represented by a new attorney in his postconviction action.

In his motion, Malone argued that he had been deprived of effective assistance of counsel at trial and on direct appeal by his attorney's allowance of a familial relationship with the victim to affect the representation. He also contended counsel had failed to offer evidence of Hart's own negligence, failed to effectively cross-examine witnesses, failed to move to suppress certain evidence, and failed to move to bifurcate the trial. In an amended motion, Malone added an allegation that his appellate counsel failed to raise prosecutorial misconduct. Malone also claimed that he had been denied due process at trial by the prosecutor's withholding of exculpatory impeachment evidence, use of false testimony, and commenting inappropriately. Further, Malone alleged that "errors and omissions of the [b]ill of [e]xceptions prevent[ed] a proper appeal and unduly prejudice[d]" him.

In an order dated January 14, 2020, the district court overruled Malone's postconviction motion without an evidentiary hearing. The court rejected Malone's allegations of ineffective assistance of counsel because they were not pled with specific facts or were affirmatively rebutted by the record. Further, it found Malone's claims of prosecutorial misconduct "procedurally barred, because they could have been brought on direct appeal." Finally, because a "conclusory allegation that the [b]ill of [e]xceptions is inaccurate would not be a

---

[2] See *State ex rel. Malone v. Baldonado-Bellamy*, 307 Neb. 549, 950 N.W.2d 81 (2020).

constitutional deprivation" capable of rendering Malone's sentences void or voidable, the court also denied that claim.

Malone timely perfected an appeal.

## 4. Motion to Amend Bill of Exceptions

After perfecting an appeal in his postconviction action, Malone filed an application in the Nebraska Court of Appeals "pursuant to Neb. Ct. R. App. P. §2-105(B)(5) [(rev. 2018),]" for a "remand" to the district court, inter alia, "to correct the bill of exceptions" and play an audio recording of Malone's testimony at trial.

The Court of Appeals granted Malone's application, in part, and ordered "pursuant to . . . § 2-105(B)(5) that a hearing shall be held in the Douglas County District Court" to determine whether to amend the bill of exceptions. However, the Court of Appeals specified that "[the] case is not remanded to district court."

At an evidentiary hearing held in June 2020, Malone testified that three exchanges during the prosecutor's cross-examination of him were missing from the bill of exceptions. In the first exchange, Malone recalled telling the prosecutor that he had attempted mouth-to-mouth resuscitation on Hart immediately after the collision. In the second exchange, Malone recounted a dialogue about whether Malone's car or Hart's motorcycle had initiated contact with the other, and in the third exchange, Malone alleged that in response to his explanation about why he had moved his car after the collision, the prosecutor had expressed skepticism. In addition to Malone's testimony that these three exchanges had occurred, he offered supportive affidavits from three family members who had been in attendance at trial, as well as from a private investigator who averred that he had contacted several jurors from trial, some of whom said they remembered the alleged missing exchanges.

On June 12, 2020, the district court issued an order denying Malone's motion to amend the bill of exceptions. The

court held that "based on the . . . sworn affidavit of [its current court reporter], there are no amendments to be made to the [b]ill of [e]xceptions." The current court reporter averred that after having listened to the audio recording from Malone's trial, she believed the bill of exceptions was accurate.

Malone timely perfected a second appeal. The Court of Appeals ordered Malone's two appeals consolidated. We granted bypass of the Court of Appeals' review.

## III. ASSIGNMENTS OF ERROR

Malone assigns 13 errors, which we consolidate and restate as two: (1) The district court erred in denying his motion to amend the bill of exceptions, and (2) the district court erred in overruling his motion for postconviction relief without an evidentiary hearing.

## IV. STANDARD OF REVIEW

[1] Whether a party has complied with the requirements under our rules of appellate procedure is determined de novo upon a review of the record.[3]

[2] In appeals from postconviction proceedings, an appellate court reviews de novo a determination that the defendant failed to allege sufficient facts to demonstrate a violation of his or her constitutional rights or that the record and files affirmatively show that the defendant is entitled to no relief.[4]

[3,4] Claims of ineffective assistance of counsel involve mixed questions of law and fact.[5] When reviewing claims of ineffective assistance of counsel, an appellate court reviews the factual findings of the lower court for clear error and the legal determinations de novo.[6]

---

[3] See *State v. Catlin, ante* p. 294, 953 N.W.2d 563 (2021).

[4] *State v. Parnell*, 305 Neb. 932, 943 N.W.2d 678 (2020).

[5] See *State v. Russell, ante* p. 499, 954 N.W.2d 920 (2021).

[6] See *id.*

## V. ANALYSIS

### 1. Bill of Exceptions

Malone's first assignment of error concerns the veracity of the bill of exceptions.

[5,6] An accurate bill of exceptions is essential to providing meaningful appellate review.[7] As the only proper vehicle for bringing evidence before an appellate court,[8] a bill of exceptions "imports absolute verity" once it has been submitted on appeal.[9] As authorized by statute,[10] the various procedures for compiling, certifying, and amending a bill of exceptions are detailed in Neb. Ct. R. App. P. § 2-105 (rev. 2018).[11]

After perfecting his first appeal, Malone filed an application for the Court of Appeals to "remand" for a § 2-105(B)(5) hearing to correct the bill of exceptions. The Court of Appeals granted Malone's application, in part, and ordered the district court to hold a hearing "pursuant to . . . § 2-105(B)(5)." Apparently in an attempt to avoid divesting itself of jurisdiction over Malone's appeal, the Court of Appeals clarified that the "case is not remanded to [the] district court."

Following what it termed a "hearing on the [m]andate from the Nebraska Court of Appeals on . . . Malone's [a]pplication for [r]emand to [p]roceed in [d]istrict [c]ourt to [c]orrect the [b]ill of [e]xceptions," the district court held that "there are no amendments to be made to the [b]ill of [e]xceptions." Malone assigns this was in error.

---

[7] See, *In re Estate of Radford*, 297 Neb. 748, 901 N.W.2d 261 (2017); *Hynes v. Good Samaritan Hosp.*, 285 Neb. 985, 830 N.W.2d 499 (2013). See, also, *Curran v. Wilcox*, 10 Neb. 449, 6 N.W. 762 (1880).

[8] See, *State v. Ferrin*, 305 Neb. 762, 942 N.W.2d 404 (2020); *Western Ethanol Co. v. Midwest Renewable Energy*, 305 Neb. 1, 938 N.W.2d 329 (2020).

[9] See *State v. Dyer*, 245 Neb. 385, 404, 513 N.W.2d 316, 328 (1994). Accord *Wonderling v. Conley*, 182 Neb. 446, 155 N.W.2d 349 (1967).

[10] See Neb. Rev. Stat. § 25-1140 (Reissue 2016).

[11] See *Peterson v. Skiles*, 173 Neb. 223, 113 N.W.2d 105 (1962) (citing previous version of § 2-105).

[7] As an initial matter, we question whether the Court of Appeals had authority to grant Malone's application for remand without divesting itself of jurisdiction over the cause. A remand order generally terminates the present appeal's pendency.[12] We see no authority cited to us permitting the Court of Appeals to have remanded only a portion of the issues before it while maintaining jurisdiction over the remaining issues.

[8,9] Indeed, the authority cited by Malone in his application for remand did not allow for the procedure he requested. There is only one proper procedure for amending a bill of exceptions, and it is set out in § 2-105(B)(5).[13] We require strict compliance with our rules of appellate procedure.[14]

Under § 2-105(B)(5), parties in a case "may amend the bill of exceptions by written agreement to be attached to the bill of exceptions."[15] In the case of disagreement between the parties, the bill of exceptions can be amended upon a motion to the district court:

> Proposed amendments not agreed to by all the parties to the case shall be heard and decided by the district court after such notice as the court shall direct. The order of the district court thereon shall be attached to the bill of exceptions prior to the time the case is submitted to the Supreme Court. Hearings with respect to proposed amendments to a bill of exceptions may be held at chambers anywhere in the state.[16]

[10] In *Millennium Laboratories v. Ward*,[17] we interpreted the above language to find that so long as the proper

---

[12] See *TransCanada Keystone Pipeline v. Tanderup*, 305 Neb. 493, 941 N.W.2d 145 (2020). Cf. *Rohde v. Farmers Alliance Mut. Ins. Co.*, 244 Neb. 863, 509 N.W.2d 618 (1994).

[13] See *Dyer, supra* note 9.

[14] See *Catlin, supra* note 3. See, also, *Hilligas v. Farr*, 171 Neb. 105, 105 N.W.2d 578 (1960).

[15] See *Dyer, supra* note 9.

[16] § 2-105(B)(5). See *Dyer, supra* note 9.

[17] *Millennium Laboratories v. Ward*, 289 Neb. 718, 857 N.W.2d 304 (2014).

procedure is followed, a district court may order the bill of exceptions amended at any time before the case is submitted for a decision by the appellate court. A case is "'eligible for submission at any time after the appellee's brief has been filed.'"[18]

After the appeal in *Millennium Laboratories* had been perfected, but before the case was submitted to this court, the appellee moved in the district court to amend the bill of exceptions. The district court held a § 2-105(B)(5) hearing and sustained the appellee's motion, ordering the clerk of the district court to prepare and transmit an amended bill of exceptions.

We found that such amended bill of exceptions, duly certified, had been properly made a part of the appellate record pursuant to § 2-105(B)(5).[19] The proper procedure in moving to amend the bill of exceptions had been followed.[20]

We note that 2 months before we decided *Millennium Laboratories*, we were presented with a similar scenario in *State v. Kays*.[21] After perfecting an appeal, the appellant filed an application with the Court of Appeals to remand to the district court to correct the bill of exceptions. The Court of Appeals granted the application and returned the matter to the district court for a § 2-105(B)(5) hearing. We held, inter alia, that the district court's subsequent order declining to amend the bill of exceptions was not plain error.[22]

[11] But to the extent our decision in *Kays* can be read to approve the underlying procedure used to amend the bill of exceptions in that case and in the case at issue, that aspect of the decision is overruled. The terms of § 2-105(B)(5)

---

[18] *Id.* at 724, 857 N.W.2d at 310 (quoting Neb. Ct. R. App. P. § 2-111(A) (rev. 2014)).

[19] See *Millenium Laboratories, supra* note 17.

[20] See *id.*

[21] *State v. Kays*, 289 Neb. 260, 854 N.W.2d 783 (2014).

[22] See *id.*

require that a motion to amend the bill of exceptions be filed in the district court and not in an appellate court.

Consequently, here we find that Malone failed to comply with the procedure set forth in § 2-105(B)(5). He sought to amend the bill of exceptions by filing an application for remand in the Court of Appeals. Since his initial appeal had been perfected at that time, but not yet submitted to the Court of Appeals, Malone could have moved in the district court to amend the bill of exceptions.[23]

But he did not do so. We find no evidence in the appellate record that Malone filed a motion to amend the bill of exceptions in the district court; his attempt to amend the bill of exceptions was therefore improper. Because he failed to strictly comply with our rule of appellate procedure for amending the bill of exceptions, we do not consider the merits of his first assignment of error.

### 2. Postconviction Relief

Malone next assigns that the district court erred in overruling his motion for postconviction relief without an evidentiary hearing.

[12-14] Under the Nebraska Postconviction Act,[24] a prisoner in custody may move to be released on the ground that there was such a denial or infringement of his or her constitutional rights as to render the judgment void or voidable.[25] Postconviction relief is a very narrow category of relief and is not intended to secure a routine review for any defendant dissatisfied with his or her sentence.[26] A motion for postconviction relief cannot be used to secure review of issues that

---

[23] See *Millennium Laboratories, supra* note 17.

[24] Neb. Rev. Stat. §§ 29-3001 to 29-3004 (Reissue 2016).

[25] § 29-3001(1). See *State v. Dalton*, 307 Neb. 465, 949 N.W.2d 752 (2020).

[26] See, *Dalton, supra* note 25; *State v. Beehn*, 303 Neb. 172, 927 N.W.2d 793 (2019).

were known to the defendant and which were or could have been litigated on direct appeal.[27]

[15,16] Section 29-3001(2) entitles a prisoner to an evidentiary hearing on his or her motion for postconviction relief, unless "the motion and the files and records of the case show to the satisfaction of the court that the prisoner is entitled to no relief."[28] An evidentiary hearing is not required if (1) the motion does not contain factual allegations of a violation or infringement of the prisoner's constitutional rights, (2) the motion alleges only conclusions of fact or law, or (3) the record affirmatively shows that the prisoner is entitled to no relief.[29] In the absence of allegations that would render the judgment void or voidable, the proper course is to overrule the motion without an evidentiary hearing for failure to state a claim.[30]

The district court overruled Malone's motion for postconviction relief without an evidentiary hearing. Malone assigns that this was error.

Before we consider the arguments that Malone raises in support of this assignment of error, we note an argument he does not preserve on appeal. Malone does not assign or specifically argue that the alleged misstatements in the bill of exceptions, discussed above, violated his constitutional rights. At oral argument, Malone conceded that he was not raising such an argument on appeal, but that his argument concerning the bill of exceptions was limited to alleging that the district court had erred under § 2-105(B)(5) of the appellate rules of practice in declining to amend the bill of exceptions.

[17] An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the

---

[27] See *Dalton, supra* note 25. See, also, *State v. Tyler*, 301 Neb. 365, 918 N.W.2d 306 (2018).

[28] See *Parnell, supra* note 4.

[29] See *id.*

[30] See *Tyler, supra* note 27. See, also, *Parnell, supra* note 4.

error to be considered by an appellate court.[31] Because Malone did not specifically assign and argue that the alleged misstatements in the bill of exceptions violated his constitutional rights, we do not consider any such argument here.

### (a) Claim of Ineffective
### Assistance of Counsel

We begin our analysis of Malone's postconviction motion by considering his claim of ineffective assistance of counsel.

[18-20] Our ineffective assistance of counsel jurisprudence stems from *Strickland v. Washington*,[32] which held that a criminal defendant's rights under U.S. Const. amend. VI may be violated if he or she is afforded inadequate representation by his or her attorney.[33] Under *Strickland*, we apply a two-step analysis for determining whether a defendant is entitled to postconviction relief based on a claim of ineffective assistance of counsel.[34] Although both elements must be met for a meritorious claim of ineffective assistance of counsel, an appellate court may address them in either order.[35]

[21-25] To prevail under *Strickland*, a defendant must first show that his or her attorney's performance was deficient, meaning it objectively did not equal that of a lawyer with ordinary training and skill in criminal law.[36] Second, the defendant must show that he or she suffered prejudice as a result of the attorney's deficient performance.[37] Prejudice means

---

[31] *Cinatl v. Prososki*, 307 Neb. 477, 949 N.W.2d 505 (2020).

[32] See *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

[33] See *Dalton, supra* note 25.

[34] See *id.* Accord *Shinn v. Kayer*, ___ U.S. ___, 141 S. Ct. 517, 208 L. Ed. 2d 353 (2020).

[35] See *State v. Clausen*, 307 Neb. 968, 951 N.W.2d 764 (2020).

[36] *Id.* See, also, *Andrus v. Texas*, ___ U.S. ___, 140 S. Ct. 1875, 207 L. Ed. 2d 335 (2020).

[37] See *Clausen, supra* note 35.

a reasonable probability that but for the attorney's deficient performance, the result of the proceeding would have been different.[38] A reasonable probability is a substantial probability sufficient to undermine confidence in the outcome.[39] We review these two prongs with a strong presumption that counsel's actions were reasonable.[40]

[26] Where, as here, the defendant was represented by the same attorney at trial and on direct appeal, the defendant is not procedurally barred from raising trial counsel's ineffectiveness in a motion for postconviction relief.[41]

### (i) Defense Counsel's Familial Relationship With Victim

Malone's first allegation of ineffective assistance of counsel is that his trial counsel's personal familial relationship with Hart amounted to an actual conflict of interest that adversely affected the lawyer's representation of Malone.

[27,28] The phrase "conflict of interest" denotes a situation in which regard for one duty tends to lead to disregard of another or where a lawyer's representation of one client is rendered less effective by reason of his or her representation of another client.[42] When a defendant shows that "'an actual conflict of interest'" burdened his or her attorney's representation and affected the lawyer's performance, we apply a "presumption of prejudice," because it is difficult to measure

---

[38] See *Parnell, supra* note 4.

[39] *State v. Collins*, 307 Neb. 581, 950 N.W.2d 89 (2020). See, also, *Shinn, supra* note 34.

[40] See *State v. Weathers*, 304 Neb. 402, 935 N.W.2d 185 (2019). Accord *Parnell, supra* note 4.

[41] See *State v. Devers*, 306 Neb. 429, 945 N.W.2d 470 (2020), *cert. denied* No. 20-6385, 2021 WL 231973 (U.S. Jan. 25, 2021). See, also, *State v. Senteney*, 307 Neb. 702, 950 N.W.2d 585 (2020).

[42] *State v. McGuire*, 286 Neb. 494, 837 N.W.2d 767 (2013) (citing *State v. Marchese*, 245 Neb. 975, 515 N.W.2d 670 (1994)).

the precise effect on the defense of representation corrupted by conflicting interests.[43]

According to Malone, his attorney was "a second, third, or fourth cousin" to one of Hart's parents. Malone asserts that it was because of this actual conflict of interest that at trial the attorney did not effectively cross-examine Matthew Kelly, the Omaha police officer who arrived at the scene and arrested Malone a short time later, or raise Hart's own negligence as a defense. For example, Malone notes that when explaining why he did not wish to raise Hart's own negligence as a defense, the attorney allegedly stated it would "make . . . Hart look bad and upset [Hart's] family." Malone thus urges this court to apply a presumption of prejudice under *Strickland* based on his attorney's familial relationship with Hart.

### a. Actual Conflict of Interest

As an initial matter, we are unpersuaded that the familial relationship between Malone's attorney and the victim amounted to an actual conflict of interest.

[29,30] We define an actual conflict of interest for Sixth Amendment purposes broadly. The phrase "actual conflict of interest" therefore encompasses any situation in which a defense counsel faces divided loyalties such that regard for one duty tends to lead to disregard of another.[44] An actual conflict of interest is one that adversely affects counsel's performance.[45]

[31] While there are several types of conflicts of interest that could arise, where the issue is that the client's interests

---

[43] *State v. Avina-Murillo*, 301 Neb. 185, 197, 198, 917 N.W.2d 865, 875 (2018) (quoting *Strickland, supra* note 32). See, also, *Cuyler v. Sullivan*, 446 U.S. 335, 100 S. Ct. 1708, 64 L. Ed. 2d 333 (1980).

[44] *Avina-Murilla, supra* note 43. Accord *State v. Jackson*, 275 Neb. 434, 747 N.W.2d 418 (2008).

[45] See *Avina-Murilla, supra* note 43. See, also, *Mickens v. Taylor*, 535 U.S. 162, 122 S. Ct. 1237, 152 L. Ed. 2d 291 (2002).

could conflict with the attorney's personal interests, we deem it a personal interest conflict.[46] Malone raises a personal interest conflict because he argues that his attorney's personal interests, by way of the familial relationship with Hart, prevented the attorney from adequately defending Malone.

[32,33] A personal interest conflict is arguably the least consequential type of conflict that we recognize, because "when the attorney has a personal conflict, the attorney can still fulfill his or her duty of loyalty to a client, although doing so may be to the detriment of the attorney's personal interest."[47] We generally do not apply a presumption of prejudice to personal interest conflicts unless "'the defendant shows that his or her defense counsel faced a situation in which conflicting loyalties pointed in opposite directions and that his or her counsel acted for the other client's interests or the counsel's own personal interests and against the defendant's interests.'"[48]

Although we have never before considered whether a familial relationship similar to the one presented here qualifies as an actual conflict of interest, we have considered other personal interest conflicts. In *State v. Edwards*,[49] we held that a defense attorney's friendship with a material prosecution witness did not amount to an actual conflict of interest. This determination was because "[t]he record simply [did] not support a finding that [the attorney] had such a loyalty to [the witness] that would have tempted him at trial to act against [the defendant's] interests."[50]

---

[46] See *Avina-Murillo, supra* note 43.

[47] *Id.* at 198, 917 N.W.2d at 875.

[48] *Id.* at 202, 917 N.W.2d at 877-78 (quoting *State v. Cotton*, 299 Neb. 650, 910 N.W.2d 102 (2018), *disapproved on other grounds, Avina-Murillo, supra* note 43). See, also, *State v. Edwards*, 294 Neb. 1, 880 N.W.2d 642 (2016).

[49] *Edwards,* supra note 48.

[50] *Id.* at 22, 880 N.W.2d at 655.

Likewise, in *State v. Jackson*,[51] no actual conflict of interest was found where the defendant had alleged that the friendship between his trial counsel and appellate counsel prevented the appellate counsel from adequately raising the trial counsel's ineffectiveness. We held that because "[the defendant] fails to point to evidence which might show that [trial counsel and appellate counsel] had a personal relationship," there is nothing to suggest that appellate counsel had divided loyalties that might have resulted in his adjusting his appeal strategy to protect his friend.[52]

In contrast, in *State v. Armstrong*,[53] we found an actual conflict of interest based on defense counsel's declining to ask for a continuance at trial. This determination was because defense counsel feared that he would personally face criminal or ethical sanctions.[54] As a result, we found that the defendant "faced a situation in which conflicting loyalties pointed in opposite directions," and this accordingly raised a presumption of prejudice under *Strickland*.[55]

Perhaps the best analogy to this case is *State v. Avina-Murillo*.[56] There, a conflict arose during trial when the defense counsel and defendant were found to have eaten lunch at a restaurant together with the victim and his family. The trial court made a record of the incident, noting that no-contact and sequestration orders had been in place prohibiting any contact between the defense counsel and the victim's family. Defense counsel lied about the incident to the trial court, then declined to call the victim's family to testify at trial. We found that

---

[51] *Jackson, supra* note 44.

[52] *Id.* at 442, 747 N.W.2d at 430.

[53] *State v. Armstrong*, 290 Neb. 991, 863 N.W.2d 449 (2015), *disapproved on other grounds, Avina-Murillo, supra* note 43.

[54] See *id.*

[55] *Id.* at 1016, 863 N.W.2d at 468.

[56] *Avina-Murillo, supra* note 43.

despite the defense counsel's apparent personal interest conflict, it "[did] not rise to the level of demanding a presumption of prejudice."[57]

Similarly, here, the alleged personal interest conflict is based on a relationship between the defense counsel and the victim's family. Hart is apparently the son of "a second, third, or fourth cousin" to Malone's attorney. We note that other jurisdictions have categorically found similarly distant degrees of familial relationship insufficient to present an actual conflict of interest, stating, for example, that "a familial relationship more distant than the third degree of relationship shared by defense counsel and the victim of a crime is insufficient to present a conflict of interest so as to disqualify defense counsel from representing the accused."[58] We also note that pursuant to our code of judicial ethics, a judge is not necessarily disqualified from a case due to a familial relationship with the victim unless the victim is at least a first cousin or equivalent degree of relation to the victim.[59]

Not only is Malone's attorney at best a distant relative to Hart, there is nothing in the record to suggest that the attorney felt any loyalty to Hart or to Hart's immediate family. The attorney acknowledged that he had never met Hart and that he did not expect the relationship "would affect [his] representation of . . . Malone." We see no basis for finding that the attorney's familial relationship led him to disregard his representation of Malone.

Thus, to the extent Malone's attorney had a personal interest conflict in his representation at trial, we find that it was not an actual conflict of interest that would give rise to a presumption of prejudice under *Strickland*.

---

[57] *Id.* at 203, 917 N.W.2d at 878.

[58] See, e.g., *State v. Vance*, 207 W. Va. 640, 647, 535 S.E.2d 484, 491 (2000).

[59] See Neb. Rev. Code of Judicial Conduct § 5-302.11(A)(2). See, also, *Thompson v. Millard Pub. Sch. Dist. No. 17*, 302 Neb. 70, 921 N.W.2d 589 (2019).

b. Waiver

Moreover, we find that even if there had been an actual conflict of interest, Malone effectively waived such conflict.

[34-36] A defendant can waive his or her right to assistance of counsel unhindered by a conflict of interest, provided that the waiver is knowing and intelligent.[60] There is no formalistic litany required to establish that a waiver was knowingly and intelligently made; instead, when considering whether a defendant voluntarily, knowingly, and intelligently waived his or her right to counsel, we review the totality of the circumstances appearing in the record.[61] A voluntary waiver, knowingly and intelligently made, must affirmatively appear from the record, before a court may conclude that a defendant has waived a right constitutionally guaranteed or granted by statute.[62]

[37,38] In determining whether a defendant's waiver of a statutory or constitutional right was voluntary, knowing, and intelligent, an appellate court applies a clearly erroneous standard of review.[63] Under a clearly erroneous standard of review, an appellate court does not reweigh the evidence, but the appellate court decides the ultimate question independent of the trial court's ruling.[64]

According to Malone, the district court erred in accepting his waiver of the defense counsel's personal interest conflict because the relinquishment in open court was not knowing and intelligent. According to Malone, he had only been made aware of the familial relationship between his attorney and Hart on the day of the hearing. By stating that he had discussed the conflict with Malone and Malone's family, Malone claims that

---

[60] *Cotton, supra* note 48.

[61] *Id*.

[62] *Id.*

[63] *State v. Iddings*, 304 Neb. 759, 936 N.W.2d 747 (2020).

[64] *Cotton, supra* note 48.

his attorney "misrepresented" their conversations.[65] Malone claims that he "was stunned in court by the revelation" from his attorney.[66]

Although Malone may now claim that he was stunned by his attorney's revelation, the transcript from his hearing indicates otherwise. After the attorney's disclosure that he was distantly related to the victim, Malone was asked by the court whether he had any issue with his attorney's continuing representation of him. Malone responded, "No, ma'am," that he had no issue.

Even if, as Malone now alleges, it was not until the day of the hearing that he learned of his attorney's potential personal interest conflict, he effectively waived such conflict by stating that he understood his attorney's disclosure and still had no issues. Malone raised no other issues pertaining to a conflict of interest besides what he heard and agreed to in open court.

It was therefore not clear error for the district court to conclude, based on this conversation, that Malone's waiver was knowing, intelligent, and voluntary. The district court did not err in finding the personal interest conflict waived.

Malone's argument that prejudice should be presumed based on his defense attorney's personal interest conflict is accordingly without merit.

### (ii) Failure to Raise Defense Based on Hart's Own Negligence

Malone's next allegation of ineffective assistance of counsel is based on his counsel's failure to raise Hart's own negligence as a defense.

[39] Malone acknowledges that under longstanding principle, "contributory negligence is not a defense to the charge of motor vehicle homicide. . . . Rather, [for purposes of a

---

[65] Brief for appellant at 33.

[66] *Id.* at 34.

defendant's liability,] the issue is whether a defendant's violation of the law was a contributing factor to the death."[67]

[40] Still, Malone cites *State v. Ring*[68] for the proposition that if a decedent's negligence is the sole proximate cause of his death, then the decedent's negligence is a defense.[69] According to Malone, Hart's own negligence in "laying down" his motorcycle when he saw Malone's car approaching was a "superseding and intervening cause of [Hart's] injuries."[70] Malone contends that his trial counsel should have argued that by laying down his motorcycle, Hart had violated provisions of Nebraska's motorcycle operator manual. Malone alleges that if his trial counsel would have raised this argument, a traffic accident reconstructionist Malone had hired would have testified that "Hart's actions were 'extremely dangerous' and, without . . . Hart's own negligence, the collision never would have occurred."[71]

[41-44] But Malone's argument misconstrues the concept of proximate causation as it relates to this record. Proximate causation refers to the basic requirement that there must be some direct relation between the injury asserted and the injurious conduct alleged.[72] A "proximate cause" is a moving or effective cause or fault which, in the natural and continuous sequence, unbroken by an efficient intervening cause, produces a death or injury and without which the death or injury

---

[67] *State v. Brown*, 258 Neb. 330, 340, 603 N.W.2d 419, 427 (1999) (citing *State v. Ring*, 233 Neb. 720, 447 N.W.2d 908 (1989), *disapproved on other grounds, State v. Irish*, 292 Neb. 513, 873 N.W.2d 161 (2016); *State v. William*, 231 Neb. 84, 435 N.W.2d 174 (1989); and *State v. Rotella*, 196 Neb. 741, 246 N.W.2d 74 (1976)).

[68] *Ring, supra* note 67.

[69] See, also, *Brown, supra* note 67; *William, supra* note 67; *State v. Meints*, 212 Neb. 410, 322 N.W.2d 809 (1982).

[70] Brief for appellant at 24.

[71] *Id.* at 23.

[72] *Irish, supra* note 67.

would not have occurred.[73] Criminal conduct is a proximate cause of the event in question if the event would not have occurred but for that conduct.[74] Conversely, conduct is not a proximate cause of an event if that event would have occurred without such conduct.[75]

Here, it is clear that Hart's action was not the sole proximate cause of the collision. Even if Hart was not acting with due care when he laid down his motorcycle, that action was defensive. It was Hart's attempt to stop his motorcycle before it collided with Malone's car, which, after having run a red light and pulling directly into the path of Hart's motorcycle, was rapidly approaching.

Laying down one's motorcycle may seem a dangerous, extraordinary maneuver if performed in isolation; however, Hart's action was not performed in isolation, but instead was in response to an imminent, life-threatening danger precipitated by Malone. In that situation, it was entirely foreseeable that Hart would take defensive action to protect himself. Hart's laying down his motorcycle was therefore not the sole proximate cause of his own death.

Malone also asserts in his brief that Hart's negligence "acted as a superseding and intervening cause of [Hart's] injuries."[76] We acknowledge that we have made reference to independent intervening causes in some of our prior cases where the alleged negligence of the victim was at issue.[77] But it appears that language was first used in cases in which the defendant alleged that a third party had caused the victim's death.[78] Because the doctrine of efficient intervening cause focuses on whether

---

[73] *Id.*

[74] *Id.*

[75] *Id.*

[76] Brief for appellant at 24.

[77] See, e.g., *Ring, supra* note 67.

[78] See, *Hoffman v. State*, 162 Neb. 806, 77 N.W.2d 592 (1956); *Birdsley v. State*, 161 Neb. 581, 74 N.W.2d 377 (1956).

the acts of a *third party* broke a causal connection,[79] we believe that doctrine has no role to play when, as here, it is contended only that the victim's negligence caused his or her death. In such a case, a victim's negligence cannot absolve the defendant of a motor vehicle homicide charge unless the actions of the victim were the sole proximate cause of the accident.[80]

There is no merit to Malone's contention regarding a defense based on Hart's action as the sole proximate cause of his own death. As we stated in a similar context, "'[t]his effort to shift the blame for what occurred to the [decedent] by introducing an argument based upon proximate cause does not impress us.'"[81]

### (iii) Failure of Adequate Cross-Examination

Malone continues his ineffective assistance of counsel argument by next raising his trial counsel's cross-examination of Kelly, the Omaha police officer who had arrived at the scene of the collision and arrested Malone.

Kelly testified at trial as to Malone's impairment at the time of the collision. Malone's attorney cross-examined Kelly. According to Malone, this cross-examination was inadequate because it failed to raise Kelly's "multiple contradictory statements, statements of facts unsupported by any evidence or testimony, and statements of his own subjective opinion unsupported by any other evidence."[82] If a "competent" cross-examination would have been performed, Malone alleges that his trial counsel could have impeached Kelly "and ma[de] it clear to the jury that he was not a trustworthy witness worthy of belief."[83]

---

[79] See *Jacobs Engr. Group v. ConAgra Foods*, 301 Neb. 38, 917 N.W.2d 435 (2018).

[80] See *Brown, supra* note 67.

[81] *William, supra* note 67, 231 Neb. at 90, 435 N.W.2d at 178 (quoting *State v. Machmuller*, 196 Neb. 734, 426 N.W.2d 69 (1976)).

[82] Brief for appellant at 26.

[83] *Id.*

This allegation is without merit. Not only are Malone's allegations of factual misstatements in Kelly's testimony largely unfounded according to the appellate record, Malone does not explain what he believes a "competent" trial counsel would have said to further emphasize the alleged contradictions and misstatements in Kelly's testimony.[84]

As such, Malone failed to allege sufficient facts to support his allegation.[85] The district court thus did not err in rejecting this argument.

### (iv) Failure to Move to Suppress

Fourth, Malone contends that his trial counsel was ineffective for failing to file certain pretrial motions.

### a. Autopsy Photograph

Malone first identifies autopsy photographs of Hart that were introduced at trial, but that Malone claims were unduly prejudicial and so should have been suppressed under Neb. Rev. Stat. § 27-403 (Reissue 2016). Although Malone's attorney did not move prior to trial to suppress the photographs, he did object at trial. Malone now argues his attorney was ineffective for not having had the photographs suppressed at trial and not having adequately raised the issue on direct appeal. According to Malone, his trial counsel "showed a lack of preparation to support his objection [at trial]"[86] and "did not raise the issue, leaving the prosecutor's vague and inaccurate argument unchallenged."[87]

[45,46] Even if his trial counsel and appellate counsel had challenged the photographs in the manner Malone now suggests, Malone has not shown that it would have changed the outcome of his trial. As we observed recently, "gruesome

---

[84] Cf. *State v. Custer*, 298 Neb. 279, 903 N.W.2d 911 (2017).

[85] See *Strickland, supra* note 32.

[86] Brief for appellant at 28.

[87] *Id.* at 29.

crimes produce gruesome photographs."[88] The simple fact that a photograph is gruesome does not make the photograph inadmissible as unduly prejudicial.[89] If the State lays proper foundation, photographs that illustrate or make clear a controverted issue in a homicide case are admissible, even if gruesome.[90]

Here, Malone does not dispute that the State laid a proper foundation for the autopsy photographs, because they were offered during the testimony of the coroner who examined Hart. The autopsy photographs were offered during the coroner's testimony to aid the coroner in describing Hart's injuries. Among other things, the nature of these injuries were relevant to the manner in which Hart had died. Malone challenged whether he or Hart had collided with the other. Through the coroner's testimony and the autopsy photographs, the State sought to show it was Malone who collided with Hart and not the other way around.

The photographs were also relevant to other issues at trial, such as the speed at which Hart had been traveling and whether Hart attempted to avoid the collision. Malone has accordingly failed to show that he was prejudiced, and his argument with respect to these photographs is thus without merit.

b. Stephen Venteicher's Testimony

Malone next challenges the testimony of Stephen Venteicher, the other Omaha police officer who arrived at the scene of the collision and aided in Malone's arrest a short time later.

[47,48] Malone alleges that Venteicher's testimony at trial about his interactions with Malone during the arrest should have been suppressed under *Miranda v. Arizona*.[91] *Miranda*

---

[88] *State v. Britt*, 305 Neb. 363, 372, 940 N.W.2d 270, 277 (2020) (citing *State v. Stelly*, 304 Neb. 33, 932 N.W.2d 857 (2019)).

[89] See *Britt, supra* note 88.

[90] *Id.*

[91] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

prohibits the use of statements derived during custodial inter-rogation unless the prosecution demonstrates the use of pro-cedural safeguards that are effective to secure the privilege against self-incrimination.[92] The *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent.[93]

The interactions at issue occurred around the time Venteicher apprehended Malone upon finding him a distance from the collision site. After stopping Malone, Venteicher pulled Malone out of his car, put him on the ground, and handcuffed him. Then, before Venteicher read *Miranda* warn-ings to Malone, Malone stated he had consumed "a few beers earlier." Venteicher testified that Malone made this statement, and Malone argues his defense counsel should have objected and moved to suppress the statement on grounds that it was obtained in violation of *Miranda*.

[49] But as the State notes, even if Malone's counsel had moved to suppress Venteicher's testimony on *Miranda* grounds, only that testimony obtained during Venteicher's custodial interrogation would have been subject to suppres-sion.[94] As indicated above, the only prejudicial testimony that Malone alleges was wrongfully obtained during this custodial interrogation was Malone's assertion that he had consumed "a few beers earlier." This statement was also recounted at trial by Kelly, and Malone has not raised a similar *Miranda* issue with respect to Kelly's testimony. Moreover, there was ample other testimony and evidence offered at trial to support the conclusion that Malone was under the influence of alcohol or drugs at the time of the collision. Therefore, to the extent Venteicher's testimony was inadmissible under *Miranda*, it was cumulative.

---

[92] *State v. Johnson, ante* p. 331, 953 N.W.2d 772 (2021).

[93] *Id.*

[94] See, *id.*; *State v. Benson*, 305 Neb. 949, 943 N.W.2d 426 (2020).

Malone has not shown that he was prejudiced by any failure of counsel in not moving to suppress Venteicher's testimony.

### c. Toxicology Report

Malone additionally identifies a toxicology report that he alleges was offered in violation of Neb. Rev. Stat. § 60-6,201 (Reissue 2010).

After Malone was arrested, he voluntarily submitted a urine sample to police for testing. The test results were included in the police's drug recognition examination and at trial. Kelly and Venteicher testified that the results of Malone's urinalysis were consistent with the presence of alcohol and drugs in Malone's system. Malone contends that his trial counsel should have moved to suppress the results of the urinalysis because its results were not valid.

Section 60-6,201(3) states that "[t]o be considered valid, tests of blood, breath, or urine made under section 60-6,197 . . . shall be performed according to methods approved by the Department of Health and Human Services." One such Department of Health and Human Services (DHHS) rule states that "[t]he presence of a drug shall mean any laboratory confirmatory test result, signal, or finding that shall be equal to or greater than the cutoff level."[95] In that same DHHS rule, cutoff limits are prescribed for seven drugs: marijuana, cocaine, morphine, codeine, phencyclidine, amphetamines, and methamphetamine.[96] "Cutoff level means the amount of drug detected which determines the absence or presence of drug."[97]

Because the drugs found in Malone's system—zolpidem, diphenhydramine, citalopram-escitalopram, and 7-aminoclonazepam—did not have prescribed cutoff limits, Malone claims they were not legally present in his system and the results

---

[95] 177 Neb. Admin. Code, ch. 7, § 002.01 (2007).

[96] Id.

[97] Id., § 001.10.

of the urinalysis were thus invalid under Neb. Rev. Stat. § 60-6,197 (Cum. Supp. 2020).

As the State notes, Malone has not cited any authority for the proposition that all drugs must have cutoff limits prescribed. Indeed, the DHHS rule Malone cites expressly only prescribes cutoff limits for the seven drugs listed.[98] It does not follow, then, that because those seven drugs have cutoff limits prescribed, tests of all other drugs not listed are inherently invalid and their results cannot be used at trial. A better reading of the rule is that the seven drugs listed need to be tested according to the cutoff limits prescribed and that testing for other drugs simply does not have cutoff limits prescribed by that particular DHHS rule.

Malone further contends that his urinalysis failed to comport with quality controls. He cites another DHHS rule, which states that "[n]o test results shall be reported if a quality control sample result is outside of acceptable limits."[99] Malone then makes the following conclusory statement: "[T]here is no indication that a quality control sample was tested and no indication of whether the quality control sample result was within the acceptable limits."[100]

Malone's argument here is unclear. It appears he is arguing that his trial counsel should have objected to the urinalysis on grounds that the test was not performed according to adequate quality control. But he offers no evidence that a quality control sample was not tested or that the quality control sample result was not within acceptable limits. Malone has therefore failed to meet his burden of showing that his counsel's performance was deficient. This argument is without merit.

### (v) Failure to Move to Bifurcate

Malone's final allegation of ineffective assistance of counsel is that his trial counsel should have moved to bifurcate

---

[98] See *id.*, § 002.01.

[99] *Id.*, § 006.05D2.

[100] Brief for appellant at 31.

trial between the first three counts and the fourth count with which he was charged.

The fourth charge was significant, Malone contends, because it alleged that he had failed to use an ignition interlock device. By allowing that charge to be combined at trial with the other three charges, Malone alleges that he was forced to impliedly concede to the jury that he had previously been convicted of driving under the influence. The issue of whether Malone had driven under the influence was relevant to the first charge, motor vehicle homicide.[101] To prevent prejudice, Malone contends that his trial counsel should have moved to bifurcate trial between Malone's fourth charge, failure to use an ignition interlock device, and his other three charges.

The district court rejected Malone's argument, reasoning that Malone's attorney had entered a stipulation preventing the jury from hearing why Malone had been required to use an ignition interlock device. Pursuant to that stipulation, neither the State nor any witnesses testified about Malone's previous three convictions for driving under the influence. Still, Malone contends that was not enough to avert prejudice and that the fourth charge should have been tried wholly separately because it "had no bearing on the other charges."[102]

[50,51] Even if Malone's counsel would have moved to bifurcate trial, it is questionable whether such motion would have been granted. Bifurcation of a trial is generally only appropriate where separate proceedings will do justice, avoid prejudice, and further the convenience of the parties and the court.[103] Whether claims should be bifurcated is generally within the discretion of the trial court.[104]

---

[101] See, Neb. Rev. Stat. § 28-306(1) (Reissue 2016); *State v. Valdez*, 305 Neb. 441, 940 N.W.2d 840 (2020).

[102] Brief for appellant at 32.

[103] See *Webb v. Nebraska Dept. of Health & Human Servs.*, 301 Neb. 810, 920 N.W.2d 268 (2018).

[104] See, *id.*; *Connelly v. City of Omaha*, 278 Neb. 311, 769 N.W.2d 394 (2009).

Here, the four charges at issue all stemmed from the same event. The convenience of the court and of at least one party, the State, was best served by litigating the issues all at once. As analyzed above, the parties made efforts to mitigate any prejudicial effect from trying the fourth charge with the first three. Malone has thus not shown that he was prejudiced by his counsel's failure to move to bifurcate his trial with respect to the charge of driving without an ignition interlock device. Malone has failed to show that the district court abused its discretion in not bifurcating. This argument is without merit.

### (b) Claim of Prosecutorial Misconduct

We turn to Malone's argument that his constitutional rights at trial were violated by prosecutorial misconduct. According to Malone, the prosecutor engaged in misconduct by withholding exculpatory evidence, allowing false testimony, and commenting inappropriately about Malone's credibility as a witness.

The district court initially rejected this argument as procedurally barred. Malone then amended his motion to add an allegation that his appellate counsel had been ineffective for failing to raise the claims of prosecutorial misconduct on direct appeal. The district court again rejected Malone's claim, reasoning that even if not procedurally barred, the claim failed to "set forth the facts and applicable law to establish an objection based on any of these prosecutorial [misconduct] claims would . . . have been successful." We agree.

[52,53] Prosecutors are charged with the duty to conduct criminal trials in such a manner that the accused may have a fair and impartial trial, and prosecutors are not to inflame the prejudices or excite the passions of the jury against the accused.[105] When considering a claim of prosecutorial misconduct, an appellate court first considers whether the prosecutor's acts constitute misconduct.[106]

---

[105] *State v. Price*, 306 Neb. 38, 944 N.W.2d 279 (2020).

[106] *State v. Guzman*, 305 Neb. 376, 940 N.W.2d 552 (2020).

[54-57] Prosecutorial misconduct encompasses conduct that violates legal or ethical standards for various contexts because the conduct will or may undermine a defendant's right to a fair trial.[107] While a prosecutor should prosecute with "'earnestness and vigor'" and "'may strike hard blows, he [or she] is not at liberty to strike foul ones.'"[108] A prosecutor's conduct that does not mislead and unduly influence the jury is not misconduct.[109] But a prosecutor's misconduct that prejudices a defendant's right to a fair trial violates due process.[110]

### (i) Withheld Evidence

Malone's first allegation of prosecutorial misconduct is that the prosecutor withheld exculpatory and impeachment evidence from him at trial.

[58-60] Under *Brady v. Maryland*,[111] prosecutors owe a duty to disclose favorable evidence to criminal defendants prior to trial.[112] Favorable evidence includes both exculpatory and impeachment evidence.[113] The "'suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.'"[114]

---

[107] See *Price, supra* note 105.

[108] *State v. Gonzales*, 294 Neb. 627, 645, 884 N.W.2d 102, 117 (2016) (quoting *Berger v. United States*, 295 U.S. 78, 55 S. Ct. 629, 79 L. Ed. 1314 (1935)).

[109] *Price, supra* note 105.

[110] See *Gonzales, supra* note 108. See, also, *Cotton, supra* note 48.

[111] *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

[112] See *State v. Harris*, 296 Neb. 317, 893 N.W.2d 440 (2017).

[113] *Id.* See, also, *United States v. Bagley*, 473 U.S. 667, 105 S. Ct. 3375, 87 L. Ed. 2d 481 (1985) (citing *Giglio v. United States*, 405 U.S. 150, 92 S. Ct. 763, 31 L. Ed. 2d 104 (1972)).

[114] *Harris, supra* note 112, 296 Neb. at 332, 893 N.W.2d at 452 (quoting *Brady, supra* note 111).

Citing *Brady*, Malone alleges that two pieces of evidence were wrongfully withheld by the prosecutor: a cruiser camera video of Kelly's interactions while apprehending Malone and blood-stained clothing that Malone had worn at the time of the collision. Malone alleges that "[b]y withholding the cruiser video and blood stained clothing, the State deprived . . . Malone of strong evidence to impeach . . . Kelly and to defend against the false allegations of the prosecuting attorneys that he did not attempt to render assistance to [Hart]."[115]

Malone's argument distorts the record. As the State notes, it does not appear that either the video or blood-stained clothing were withheld from Malone at trial. Indeed, one of Malone's trial experts referenced the video in one of his reports, thus suggesting that it had been provided to him by Malone prior to trial. Nor was Malone's blood-stained clothing withheld from him, for his defense counsel referenced it during his opening statement. Multiple witnesses for the defense, including Malone, also referenced it during their testimony.

Malone's argument here is unsupported by the record. His defense counsel was not deficient under *Strickland* for declining to raise it.

### (ii) Misstated Evidence

Malone's second allegation of prosecutorial misconduct is that the prosecutor misstated the evidence offered at trial.

Specifically, Malone alleges that the prosecutor stated falsely on four occasions that Malone had pulled directly into the intersection and that Hart had thus been left with no chance to avert the collision. We do not find these statements by the prosecutor to be misrepresentations of the record, considering that several witnesses did in fact testify that Hart lacked time to avert the collision.

Malone also argues that the prosecutor falsely characterized Malone's response after the collision. While the prosecutor

---

[115] Brief for appellant at 36.

stated that Malone did not render aid to Hart after the collision and instead began picking up his car's parts from the road to conceal his identity, Malone claims these statements were inaccurate. He additionally raises what he characterizes as inaccuracies in the testimony of certain of the State's witnesses. He contends that they testified falsely that Malone had run from his car after the collision.

Again, the record does not support Malone's argument. As the prosecutor indicated, it does not appear that Malone effectively rendered aid to Hart after the collision. It is true that some witnesses testified that Malone attempted to resuscitate Hart, but those witnesses generally agreed that the attempts had been unhelpful because of Hart's dire condition and Malone's apparent unfamiliarity with how to perform resuscitation. Other witnesses stated that Malone had rendered no aid at all. Therefore, the prosecutor's statements that Malone did not render aid were not misstatements of the evidence at trial.

Further, Malone offers no facts to rebut the prosecutor's statement that Malone began picking up his car's parts from the road soon after the collision in what appeared to be an attempt to conceal his identity. Because Malone's argument here is again unsupported by the record, the argument fails.

### (iii) Comments About Malone's Credibility

Malone's third allegation of prosecutorial misconduct is that at trial, the prosecutor commented inappropriately about Malone's credibility as a witness.

[61-64] As Malone notes, this court has recognized that a prosecutor should not express his or her personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant.[116] However, a prosecutor is entitled to draw inferences from the evidence in presenting his

---

[116] See *Price, supra* note 105.

or her case, and such inferences generally do not amount to prosecutorial misconduct.[117]

"[W]hen a prosecutor's comments rest on reasonably drawn inferences from the evidence, the prosecutor is permitted to present a spirited summation that a defense theory is illogical or unsupported by the evidence and to highlight the relative believability of witnesses for the State and the defense. Thus, in cases where the prosecutor comments on the theory of defense, the defendant's veracity, or the defendant's guilt, the prosecutor crosses the line into misconduct only if the prosecutor's comments are expressions of the prosecutor's personal beliefs rather than a summation of the evidence."[118]

[65] The danger of a prosecutor expressing a personal opinion is that the jurors may infer the prosecutor has access to information not in evidence and that with that inference and the imprimatur of the government, the jury might rest a decision on the government's opinion rather than on its own view of the evidence.[119]

Malone's argument here is without merit. He points to the statements discussed above that he alleges were wrongfully omitted from the bill of exceptions. Because those statements are not in the appellate record, we do not consider them. A bill of exceptions is the only vehicle for bringing evidence before an appellate court, and evidence which is not made a part of the bill of exceptions may not be considered.[120]

The only remaining argument that Malone raises is the prosecutor's statements, during closing, that Malone had "weave[d] a story" and that his testimony was "ridiculous." However, these appear to be "reasonably drawn inferences from the

---

[117] *State v. Munoz*, 303 Neb. 69, 927 N.W.2d 25 (2019).

[118] *Price, supra* note 105, 306 Neb. at 55, 944 N.W.2d at 293 (quoting *Gonzales, supra* note 108).

[119] *Price, supra* note 105.

[120] See, *Ferrin, supra* note 8; *Western Ethanol Co., supra* note 8.

evidence" presented at trial, and not statements about the prosecutor's beliefs in the case.[121] They did not amount to prosecutorial misconduct.

The touchstone of a due process analysis in a case of alleged prosecutorial misconduct is the fairness of trial.[122] Because the prosecutor's conduct in this case did not deprive Malone of a fair trial, we cannot say that it amounted to prosecutorial misconduct. We therefore cannot say that Malone's trial counsel and appellate counsel were deficient for failing to raise the prosecutor's conduct at trial.

## VI. CONCLUSION

For the reasons stated above, we reject Malone's argument concerning the bill of exceptions. We further find that the district court did not err in finding Malone was not entitled to an evidentiary hearing on his claims of ineffective assistance of counsel and prosecutorial misconduct. We accordingly affirm the district court's orders in this case.

Affirmed.

---

[121] See *Price, supra* note 105, 306 Neb. at 55, 944 N.W.2d at 293 (quoting *Gonzales, supra* note 108).

[122] *Gonzales, supra* note 108.